643 F.2d 1201
 25 Fair Empl.Prac.Cas. 1050,
24 Wage & Hour Cas. (BN 1350,
25 Empl. Prac. Dec. P 31,790, 91 Lab.Cas. P 34,010
 Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, (Equal Employment Opportunity
Commission substituted in the place and stead of Raymond J.
Donovan, Secretary, etc.) Plaintiff-Appellee,
v.
UNIVERSITY OF TEXAS AT EL PASO, Defendant-Appellant.
 No. 78-1787.
 United States Court of Appeals,
Fifth Circuit.
 May 1, 1981.
 
 Lonny F. Zwiener, James Robert Giddings, Asst. Attys. Gen., Austin, Tex., for defendant-appellant.
 Donald S. Shire, U. S. Dept. of Labor, Beatrice Rosenberg, Asst. Gen. Counsel, Paul E. Mirengoff, EEOC, Washington, D. C., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Before BROWN, GEWIN and POLITZ, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 The Ultimate Question Class Action?
 
 
 2
 The present action was originally brought by the Secretary of Labor (Secretary) to enjoin defendant, the University of Texas at El Paso (University), from violating the Fair Labor Standards Act (FLSA), 29 U.S.C.A. § 206(d), (Equal Pay Act), and 215(a)(2) (1963).[1] Jurisdiction is founded on 29 U.S.C.A. § 217.[2] The complaint alleges that the University was paying female employees in four specific categories teaching, library, food and custodial services less than male employees for work which is considered equal within the meaning of the Act. The suit sought to recover unpaid wages due the women in each category. The names of the assertedly discriminated employees were originally not identified. However, the Secretary eventually furnished a list of 43 persons which was later expanded through discovery to include not only faculty but staff persons as well. In the interim, the Equal Employment Opportunity Commission (EEOC) began investigating alleged sex discrimination charges at the University, whereupon the District Court joined the EEOC as a party plaintiff.
 
 
 3
 On February 6, 1978, the District Court denied the University's motion that the suit be certified as a class action pursuant to F.R.Civ.P. 23. The Court concluded that the suit was not a class action governed by Rule 23 because of the adequate enforcement provisions of the FLSA. Subsequently, the Court amended its denial order to authorize the University to seek an interlocutory appeal on the class action issue which this Court allowed. As a result, the only issue in this case is whether the District Court correctly held that § 17 FLSA actions are not subject to Rule 23. We hold that the Court's action in non-certification based on its conclusion that such actions are not governed by F.R.Civ.P. 23 was correct and accordingly, affirm.
 
 The Supreme Answer
 
 4
 The recent Supreme Court case of General Telephone Co. v. EEOC, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), is helpful in resolving this very narrow procedural issue. The Court in General Telephone held that a suit to prevent unlawful employment practices brought by the EEOC in its own name and pursuant to its authority under § 706(f)(1), Title VII of the Civil Rights Act of 1964,[3] 42 U.S.C.A. § 2000e-5(f)(1), is not subject to Rule 23, which defines and specifies requirements for a private party plaintiff in bringing class action litigation. This decision expressly overrules our decision in EEOC v. D. H. Holmes, 556 F.2d 787 (5th Cir. 1977) stressed so heavily by the University which held that class action certification was required in Title VII suits. In reaching its holding, the Supreme Court relied on (i) language of Title VII, (ii) the legislative intent underlying the 1972 amendments to Title VII, and (iii) the enforcement proceedings under Title VII prior to the amendments. Since it is now clear from General Telephone that Government Title VII actions are not governed by Rule 23, a closer look at the Supreme Court's reasoning within this same framework is warranted to determine whether certification is required in an FLSA suit.
 
 A. Statutory Language:
 
 5
 The language of § 706(f)(1) (see n.3, supra ), of Title VII specifically authorizes the EEOC to bring suit for appropriate relief from discrimination. The Court stated that:
 
 
 6
 Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals. Its authority to bring such action is in no way dependent upon Rule 23, and the Rule has no application to a § 706 suit.
 
 
 7
 General Telephone, 446 U.S. at 324, 100 S.Ct. at 1703, 64 L.Ed.2d at 326.[4]
 
 
 8
 Similarly, FLSA suits by the Secretary may be brought for unpaid minimum wage and overtime compensation under § 16(c), 29 U.S.C.A. § 216(c) and, as we have here, for injunctive relief under § 17, 29 U.S.C.A. § 217. Section 16(c)[5] authorizes the Secretary to recover back wages as well as liquidated damages on behalf of those employees specifically named in a complaint. The filing of such a suit under this section terminates the rights of any employees to become party plaintiffs pursuant to a § 16(b) action. Section 17,[6] on the other hand, allows the Secretary through the Courts to seek broad injunctive relief as well as back wages for all affected employees without any requirement that they be specifically named in the complaint. Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (5th Cir. 1970); Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126 (5th Cir. 1959); Hodgson v. Virginia Baptist Hospital, Inc., 482 F.2d 821 (4th Cir. 1973). Section 16(b)[7] of the FLSA provides that one or more employees may bring suits on behalf of themselves and other employees similarly situated. The language of § 16(b) makes it clear that § 17 suits are to be brought by the Government, and that the Government has the power to seek class-wide relief for the victims without resorting to Rule 23.
 
 B. Legislative History:
 
 9
 In citing the legislative background of the 1972 amendments which gave EEOC enforcement authority, the Supreme Court explained that Congress intended to secure more effective Title VII enforcement by providing a public right of action to supplement the existing private right under § 706. General Telephone, 446 U.S. at 324-325, 100 S.Ct. at 1703, 64 L.Ed.2d at 326. See S.Rep.No.92-415, 92nd Cong., 1st Sess. 4, H.Rep.No.92-238, 92nd Cong., 1st Sess., reprinted in (1972) U.S.Code Cong. & Ad.News 2137, 2148; see generally Title VII Class Actions, 47 University of Chicago L.Rev. 688 (1980). This expansion of EEOC's enforcement powers did not suspend the private right of action under § 706 because under § 706(f)(1) the aggrieved party may bring his own action at the expiration of the 180 day period of exclusive EEOC administrative jurisdiction if the agency has (i) failed to move the case along to the party's satisfaction, (ii) reached a determination not to sue, or (iii) reached a conciliation or settlement agreement with the respondent that the party finds unsatisfactory. In addition, intervention by the aggrieved party is available. Thus, the Court concluded that the co-existence of a public and private right of action "suggest that the EEOC is not merely a proxy for the victims of discrimination and that the EEOC's enforcement suits should not be considered representative actions subject to Rule 23." General Telephone, 446 U.S. at 326, 100 S.Ct. at 1704, 64 L.Ed.2d at 327. See S.Rep.No.92-415, 92nd Cong., 1st Sess. 4, H.Rep.No.92-238, 92nd Cong., 1st Sess., reprinted in (1972) U.S.Code Cong. & Ad.News, 2147.
 
 
 10
 Prior to the 1972 EEOC amendments, the only civil actions authorized other than private law suits were those by the Attorney General upon reasonable cause to suspect "a pattern or practice" of discrimination. None of these actions depended on a filing by the EEOC nor were they designed merely to advance a private litigant's personal interest. Thus, the 1972 amendments, in effect, transferred to the EEOC the prior Attorney General's authority to bring "pattern or practice" discrimination suits on its own.[8]
 
 
 11
 The legislative history of the 1961 FLSA amendments, which produced present § 17, stemmed from congressional dissatisfaction with the statutory enforcement scheme similar to the concerns later expressed in the debates over the EEOC Title VII 1972 amendments.[9]
 
 
 12
 Prior to 1961, backpay relief was available only in private actions under § 16(b) or a government action upon the written request by an employee under § 16(c).[10] However, because employees were reluctant to file their own suits under § 16(b) or to request the Secretary to sue as required under § 16(c), few FLSA suits were filed by the government during this time. S.Rep.No.145, 87th Cong., 1st Sess., H.Rep.No.75, 87th Cong., 1st Sess., reprinted in (1961) U.S.Code Cong. & Ad.News 1658. To redress this situation, Congress deleted that portion requiring employee requests under § 16(c), thus allowing the government to bring suit for wage discrimination violations free from the previous restraints imposed by private parties under § 16(c). In addition, § 17 was amended as an aid to the overall enforcement scheme to allow federal courts under §§ 16(c) and 17 to order the payment of the actual amount of unpaid wages due.[11]
 
 
 13
 Clearly, a § 17 suit, then, cannot be deemed a representative action on behalf of the individual employees of the type governed by a Rule 23 action. This conclusion is reinforced by the fact that employees' names are not disclosed since in a pure § 17 suit, the government is more interested in eliminating discriminatory practices than securing full backpay relief for the victims of the discrimination. Section 17 expressly emphasizes restraining violations of the FLSA, while § 16(c) authorizes the Government to "supervise the payment of unpaid wages," (see, n.5, supra ), although the Court is not foreclosed statutorily in ordering restitution of backpay wages in a proper case. Thus, in no sense is the Government a mere representative of private interests where it brings suit under § 17.
 
 
 14
 C. Enforcement Proceedings A Difference Makes The Difference
 
 
 15
 The statutory framework of enforcement procedures of the FLSA and those of Title VII are crucially different, but this difference highlights even more why Rule 23 is not needed in FLSA suits. The FLSA procedure, in effect, constitutes a congressionally developed alternative to the F.R.Civ.P. 23 procedures.[12] It is undisputed that the purpose of Rule 23 is to prevent piecemeal litigation to avoid (i) a multiplicity of suits on common claims resulting in inconsistent adjudications and (ii) the difficulties in determining the res judicata effects of a judgment.[13] Not unlike Rule 23, the FLSA provision § 16(c) terminating the employee's right to sue once the Secretary files a complaint, was intended "to relieve the courts and employers of the burden of litigating a multiplicity of suits based on the same violation of the Act by the employer," S.Rep.No.145, 87th Cong., 1st Sess. (1961) reprinted in (1961) U.S.Code Cong. & Ad.News 1659.
 
 
 16
 The FLSA provisions also substantially reduce the possibility of inconsistent adjudications because the claims of all employees who had not already initiated private actions are consolidated at the time of the filing of the Secretary's suit. The right of an affected employee to commence or become a party plaintiff in a private action terminates, 29 U.S.C.A. § 216(b), (c), but previously filed private litigation by employees are not affected. Although there is some chance for inconsistent judgments, the chance is far more remote than under Rule 23, which in some instances allows individuals to "opt out" of a Rule 23(b)(3) class action and commence their own litigations. In contrast, FLSA requires employees under § 216(c) actions to specifically "opt in" in order to be included in private litigation by filing with the Court a written consent to become a party under 29 U.S.C.A. § 216(b) actions. See LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286 (5th Cir. 1975).[14] In this respect, the FLSA provides even greater certainty to the scope of litigation than does Rule 23. However, in § 17 suits, intervention by party plaintiffs is not allowed, mandating instead that the Secretary be the sole party plaintiff much like § 707 Title VII actions which authorizes the Commission to file "pattern and practices" discrimination actions. (See note 8, supra).
 
 
 17
 Just as Congress sought to enhance the public interest[15] by broadening the EEOC's enforcement powers in the 1972 amendments as well as bringing about more effective enforcement of private rights, General Telephone, 446 U.S. at 326, 100 S.Ct. at 1704, 64 L.Ed.2d at 327, a § 17 suit is brought primarily in the public interest despite the fact that employees may be the ultimate beneficiaries of the actions. See Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974); Wirtz v. Jones, 340 F.2d 901, 903-04 (5th Cir. 1965); Wirtz v. Malthor, Inc., 391 F.2d 1 (9th Cir. 1968). As this Court has previously made clear, the purpose of an injunction under § 17 is "not to collect a debt but rather to redress a wrong being done to the public good." Wirtz, 340 F.2d at 903-04. The Secretary's statutory obligation to redress public wrongs is one likely explanation why there is no requirement under § 17 that employees request, consent, compromise or otherwise affect the pending litigation by the Secretary.[16] Logically, because there is neither opting out or in by employees in a § 17 suit, no purpose neither fundamental nor due process requirements as the University urges would be served by notification procedures like those found in Rule 23. Further, as General Telephone, 446 U.S. at 331-332, 100 S.Ct. at 1707, 64 L.Ed.2d at 331, suggests the District Courts can ensure that employer/defendants are timely apprised of the scope of government suits without Rule 23 through pre-trial discovery and proceedings.
 
 
 18
 Finally, res judicata problems are also precluded by FLSA procedures because the Secretary sues on behalf of and judicially binds all employees in those categories which have not previously filed private actions.
 
 
 19
 Based on the foregoing analysis of applicable sections of the two statutes involved and the procedural scope and purpose of Rule 23, we find that the philosophy employed in General Telephone to Title VII EEOC actions warrants the conclusion that class action certification should not be employed and required in FLSA cases. Accordingly, the District Court was correct in denying class certification.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 29 U.S.C.A. § 206(d)(1):
 Prohibition of sex discrimination
 (d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.
 29 U.S.C.A. § 215(a)(2):
 (2) to violate any of the provisions of section 206 or section 207 of this title, or any of the provisions of any regulation or order of the Administrator issued under section 214 of this title;
 
 
 [2]
 The Secretary has clear authority to sue for violations of the Equal Pay Act under § 17 of the FLSA (see n.5, supra ), 29 U.S.C.A. § 217. This section gives the District Court jurisdiction to enjoin minimum wage and overtime violations. The specific language of the Equal Pay Act which was passed in 1963 as an amendment to the FLSA, recognizes that the denial of equal pay in sex discrimination cases is to be treated as though it were a denial of minimum wage or overtime compensation. It provides:
 For purposes of administration of enforcement, any amounts owing to employees which have been withheld in violation of this subsection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this Act.
 29 U.S.C.A. § 206(d)(3).
 Thus, the Secretary has express statutory authority to bring an Equal Pay suit just as though it were a suit for minimum wage or overtime.
 
 
 [3]
 2. Section 706(f)(1) provides in pertinent part:
 "If within thirty days after a charge is filed with the Commission ..., the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.... The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission .... If a charge filed with the Commission pursuant to subsection (b) of this section, is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice."
 
 
 [4]
 As an additional reason for not applying Rule 23 the Court stated that by forcing EEOC civil actions into the Rule 23 model would result in many cases in a distortion of the rule as it is commonly interpreted and in other cases foreclose enforcement actions seemingly authorized by § 706(f)(1) an undesirable result in either instance. General Telephone, 446 U.S. at 328-329, 100 S.Ct. at 1705, 64 L.Ed.2d at 328
 
 
 [5]
 29 U.S.C.A. § 216(c):
 The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 6 or 7 of this Act, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and additional equal amount as liquidated damages. The Secretary may bring an action in any court of competent jurisdiction to recover the amount of the unpaid minimum wages or overtime compensation and an equal amount as liquidated damages. The right provided by subsection (b) to bring an action by or on behalf of any employee and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation under sections 6 and 7 or liquidated or other damages provided by this subsection owing to such employee by an employer liable under the provisions of subsection (b), unless such action is dismissed without prejudice on motion of the Secretary.
 (Emphasis added).
 
 
 [6]
 29 U.S.C.A. § 217:
 The district courts, together with the United States District Court for the District of the Canal Zone, the District Court of the Virgin Islands and the District Court of Guam shall have jurisdiction, for cause shown, to restrain violations of section 15, including in the case of violations of section 15(a) (2) the restraint of any withholding of payment of wages or overtime compensation found by the court to be due to employees under this Act (except sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 6 of the Portal-to-Portal Act of 1947).
 
 
 [7]
 29 U.S.C.A. § 216(b):
 Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 17 in which restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 6 or section 7 of this Act by an employer liable therefor under the provisions of this subsection.
 (Emphasis added).
 
 
 [8]
 Senator Javits in the 1972 congressional debates commented that "if (the EEOC) proceeded by suit, then it can proceed by class suit. If it proceeds by class suit it is in the position of doing exactly what the Department of Justice does in "pattern and practice suits " 118 Cong.Rec. 4081-82 (1972)
 Congressional history reveals the following history of "pattern or practice" suits. "Pattern or practice" discrimination suits were handled by the Civil Rights Division of the Department of Justice. However, the Division could not keep pace with the number of suits filed, and it accorded the lowest priority to employment discrimination actions. Since the 1972 amendments vested the EEOC with cease and desist enforcement authority, Congress also empowered it to deal with "pattern or practice" discrimination in order to deal comprehensively with systematic discrimination. This transfer of jurisdiction was designed to eliminate (i) overlapping jurisdiction, (ii) unnecessary duplication of functions, (iii) promote uniformity in development of the law, (iv) multifarious remedies. U.S.Code Cong. & Ad.News 2151 (1972).
 
 
 [9]
 The following is an excerpt from the 1961 congressional debates
 Under the present provisions of the act, the Secretary of Labor has no authority to require the payment of minimum wages and overtime compensation not paid in compliance with the law, except where an employee requests that an action be brought by the Secretary of Labor. This limitation has impeded the Secretary in his efforts to enforce the act since many employees who have not been paid in compliance with the act are hesitant about requesting legal action against their employers.
 The bill therefore amends sections 16 and 17 of the act so as to establish a more effective method of enforcing an employee's rights by authorizing the Federal courts to order the payment of the actual amount of unpaid wages due an employee in injunctive actions brought under section 17.
 S.Rep.No.145, 87th Cong., 1st Sess., H.Rep.No.75, 87th Cong., 1st Sess., reprinted in (1961) U.S.Code Cong. & Ad.News 1620, 1658.
 
 
 [10]
 Compare underscore portion of § 16(c) with present day § 16(c), see note 5, supra. The portion underscored is no longer a part of present day § 16(c)
 "(c) The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 6 or section 7 of this Act, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. When a written request is filed by any employee with the Secretary claiming unpaid minimum wages or unpaid overtime compensation under section 6 or section 7 of this Act, the Secretary may bring an action in any court of competent jurisdiction to recover the amount of such claim: Provided, That this authority to sue shall not be used by the Secretary in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary if it does involve any issue of law not so finally settled. The consent of any employee to the bringing of any such action by the Secretary, unless such action is dismissed without prejudice on motion of the Secretary, shall constitute a waiver by such employee of any right of action he may have under subsection (b) of this section for such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages."
 29 U.S.C.A. § 216(c) (1938) (emphasis added).
 
 
 [11]
 The congressional history of § 17 of the 1949 amendments to the FLSA reveals that § 17 originally contained a proviso to the effect that "no court shall have jurisdiction, in any action brought by the Administrator to restrain violations of § 15, to order payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages." S.Rep.No.640, 81st Cong., 1st Sess., reprinted in (1949) U.S.Code Cong. & Ad.News 2241, 2273 (emphasis added)
 
 
 [12]
 See C. Wright & A. Miller Fed. Practice and Procedure § 1754, at 544 (1972); Schneider v. Electric Auto-Lite Co., 456 F.2d 366 (6th Cir. 1972); Mungin v. Florida E. Coast Ry. Co., 318 F.Supp. 720 (D.C.Fla.1970), aff'd per curiam, 441 F.2d 728 (5th Cir. 1971)
 
 
 [13]
 Pertinent provisions of F.R.Civ.P. 23 are:
 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 (b) Class Action Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class individually controlling the prosecution of defense separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
 (c) Determination by Order Whether Class Action to be Maintained; Notice; Judgment; Actions Conducted Partially as Class Action.
 (1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.
 (2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion, if he desires, enter an appearance through his counsel.
 (3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.
 (4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.
 
 
 [14]
 LaChapelle concerns a suit under Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621-634, filed by one individual and joined by other individuals. The Court held that it could not proceed as a Rule 23 action because the ADEA specifically adopted the statutory class action provisions of the FLSA providing for the "opting in" type of class action and not those procedures of F.R.Civ.P. 23. 29 U.S.C.A. § 626(b) (1967)
 
 
 [15]
 The EEOC is a public agency "charged with the vindication of public policy, not merely with the enforcement of private rights." EEOC v. Occidental Life Ins. Co. of California, 535 F.2d 533, 542 (9th Cir. 1976), aff'd, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). See EEOC v. Hearst Corp., Seattle Post Intelligencer, 553 F.2d 579 (9th Cir. 1976), where it was again recognized that the "EEOC is a public agency seeking vindication of public rights" and that a "narrower rule" would be applicable in private actions seeking judicial relief for incidents not listed in an original EEOC charge. Id
 
 
 [16]
 Indeed should any of the employees refuse to accept the back wages recovered by the Secretary, the money does not revert to the employer, but rather is paid into the U.S. Treasury. The Burk Builders, Inc. v. Wirtz 355 F.2d 451, 453 (5th Cir. 1966). See also Wirtz v. B. B. Saxon Co., Inc., 365 F.2d 457 (5th Cir. 1966); Wirtz v. Jones, 340 F.2d 901, 904 (5th Cir. 1964); Hodgson v. YB Quezada, 498 F.2d 5 (9th Cir. 1974); Hodgson v. Wheaton Glass Co., 446 F.2d 527 (3d Cir. 1971)