EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff–Appellee,

v.

PAN AMERICAN WORLD AIRWAYS,
INC., Defendant–Appellee,

v.

Morgan D. KING, Kelvin H. Keith,
Objectors–Appellants,

v.

CERTAIN CLAIMANTS,
Claimants–Appellees.

Nos. 88–15672, 89–15192.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 15, 1989.

Decided March 2, 1990.

William Bernstein, Mulholland, Bernstein and Peterson, San Rafael, Cal., Kelvin H. Keith, South Miami, Fla., in pro. per., for objectors-appellants.

Donna J. Brusoski, E.E.O.C., Washington, D.C., for plaintiff-appellee.

Judith Z. Gold, Heller, Ehrman, White and McAuliffe, San Francisco, Cal., for defendant-appellee.

Sanford Jay Rosen, Rosen and Phillips, James C. Sturdevant, Sturdevant and Sturdevant, San Francisco, Cal., for claimants-appellees.

Before WIGGINS and KOZINSKI, Circuit Judges, and STOTLER,* District Judge.

KOZINSKI, Circuit Judge:

Morgan King and Kelvin Keith are two former Pan American World Airways pilots who did not share in the benefits of a consent decree entered in an ADEA action brought by the Equal Employment Opportunity Commission against Pan Am. They appeal from a district court order denying them participation in the settlement and approving the decree.

I

Since 1964, the Federal Aviation Administration has prohibited anyone over the age of 60 from serving as a commercial airline pilot. *See* 14 C.F.R. § 121.383(c) (1989). Until this lawsuit was brought, Pan Am required its pilots to retire when they turned 60, even though many of them, including King and Keith, wished to continue working in the cockpit as flight engineers, a job with no age maximum.

The EEOC brought suit in 1981, under sections 16(c) and 17 of the Fair Labor Standards Act, 29 U.S.C. §§ 216(c), 217 (1982), charging that Pan Am's forced retirement policy violated section 4(a) of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) (1982). The EEOC's complaint sought relief on behalf of two named pilots and "any other persons who would have remained in the Company's employment past the age of 60 in a Flight Engineer position but for the Company's refusal to employ that person after he reached the age of 60." Clerk's Record (CR) 1 at 2.

Shortly after filing the complaint, the EEOC asked Pan Am for a list of former pilots, so that the Commission could notify all pilots who qualified for inclusion in the lawsuit. Pan Am produced a list of 514

---

* The Honorable Alicemarie H. Stotler, United States District Judge for the Central District of California, sitting by designation.

pilots but, inexplicably, provided mailing addresses for only 445 of them. King and Keith were both among the 514; Keith was among those whose addresses Pan Am gave to the EEOC, King was not.

On June 9, 1982, the EEOC mailed the following letter to each of the 445:

> Dear Retired Pan Am Pilot or Flight Engineer:
>
> The United States Equal Employment Opportunity Commission is currently suing Pan Am for age discrimination caused by its refusal to permit persons over the age of 60 to hold the position of flight engineer. We are attempting to identify each pilot retired since September 15, 1978 who would have taken a bump-down to flight engineer rather than be forced to terminate his employment at the age of 60. We are also trying to locate each career flight engineer who was forced to terminate his employment in that position at the age of 60 since September 15, 1978. If you fall into either of the above categories and desired to continue your employment with Pan Am past the age of 60 as a flight engineer at the time of retirement, please contact Connie Haydari of this office at the above address or phone number as soon as possible. Your prompt response will ensure that you are included in the EEOC's efforts to gain relief for the victims of Pan Am's refusal to employ flight engineers over the age of 60.
>
> If we do not hear from you, we will assume that you were not interested in continuing your employment as a flight engineer with Pan Am past the age of 60 and will not contact you further. If you have already notified this office of your interest in this position at the time you were retired, you do not need to contact us again as you are already included in the case.

Keith Excerpts of Record (ER) 39. Although Keith claims he never received this letter, the district court found to the contrary. *EEOC v. Pan American World Airways, Inc.*, No. C–81–3636 RFP at 28–29 (N.D. Cal. June 17, 1988) (order approving settlement and consent decree) (hereinafter "Order"). King, of course, did not receive the letter because the EEOC did not have his address. On September 1, 1982, the EEOC filed a statement with the district court listing those pilots who were eligible for relief; the list contained the names of 93 pilots who had responded to the mailing.[1]

Even before the EEOC's mailing, information about the suit had begun to circulate among pilots. Many Pan Am pilots knew of the dispute as early as 1978, and it was widely discussed thereafter. In November 1981, the bimonthly newsletter of the Pan Am Clipper Pioneers, an organization of former Pan Am pilots and flight engineers, included a memorandum from retired pilot Ray Egan to all retiring and former Pan Am pilots. Egan was one of the claimants named in the First Amended Complaint filed October 8, 1981. Egan's memo explained:

> The . . . lawsuit seeks to enjoin Pan Am from refusing to permit persons between the ages of 60 and 70 to hold the position of Flight Engineer. The original complaint specifically seeks relief on behalf of Frederick P. Vanderhoof and Raymond L. Russell and *"any other persons who would have remained in the Company's employment past the age of 60 in a Flight Engineer position but for the Company's refusal to employ that person after he reached the age of 60.["*] A FIRST AMENDED COMPLAINT was filed on Oct. 8, 1981 to include [17 additional named claimants] and any other person who would have remained in the Company's employment past the age of 60 in a Flight Engineer position but for the Company's refusal to employ that person after he reached the age of 60. There is a 3 year statute of limitations which dates back from Sept. 15, 1981, the date the case was originally filed in court. Thus, the only persons discrimi-

---

**1.** This number has varied through the course of the litigation, as pilots have been added or dropped for various reasons. It has now been fixed at 106, including six who never received the June 9, 1982, letter. *See* Declaration of Connie Haydari, King's ER at 42.

nated against since 9/15/78 are covered by the suit.

Pilots who were deterred from applying for bump down to flight engineer because they knew of the age 60 rule and consequently did not bid down are covered in the same manner as persons who formally bid for bump down and were rejected by Pan Am.

The EEOC's lawyer, Mr. Fritz Wollett, Equal Opportunity Commission, San Francisco District Office, 1390 Market Street, Suite 1010, San Francisco, CA 94102 states, "Any person who wants to learn more about the suit may contact me (Mr. Wollett) by collect call." Mr. Wollett cites the Western Airlines judgement of a few months ago as a precedent for optimism. In a letter to me dated September 30, 1981 he states, "should we be successful in our efforts potential remedies include back pay, liquidated damages and the opportunity to accept reemployment with Pan Am as a flight engineer."

If you are interested, there is no cost to you other than your own time and effort to provide the information required by the EEOC as soon as possible.

Supplemental Record Excerpts (SRE) 339 (emphasis original).

King and Keith denied having received the newsletter. The district court dismissed as incredible Keith's claim of non-receipt. Order at 28–29. However, the court found that the newsletter addressed to King and to at least one other retired pilot contained typographical errors in the zip codes. Order at 15–16. The court, however, deemed it unnecessary to determine whether King had actually seen Egan's memo because it found that King had notice of the litigation from other sources. Order at 16 n. 3.

In May 1983, Pan Am and the EEOC entered into a settlement agreement providing for the rehire of 46 former pilots as flight engineers, and for a back pay award of $250,000 to be divided among 30 other former pilots. The district court disapproved the settlement because the Supreme Court had just granted certiorari in *TWA v.*

*Thurston,* a case presenting similar issues, and the law was accordingly unsettled. *EEOC v. Pan American World Airways, Inc.,* 34 Fair Empl.Prac.Cas. (BNA) 321, 323 (N.D.Cal.1984).

After the Supreme Court decided *Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), Pan Am and the EEOC modified the settlement to provide for a recovery of $1.5 million, to be divided among 81 claimants. Forty-five of the claimants objected to the agreement, and the district court rejected the settlement, finding that "[t]he settlement agreement offers claimants inadequate compensation for their years of involuntary retirement." *EEOC v. Pan American World Airways, Inc.,* 622 F.Supp. 633, 648 (N.D.Cal.1985). Pan Am appealed but we dismissed for want of jurisdiction. *EEOC v. Pan American World Airways, Inc.,* 796 F.2d 314 (9th Cir.1986) (per curiam), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 829 (1987).

All this litigation did not pass unnoticed. Ray Egan deposited letters describing the dispute in the company mailboxes of all Pan Am pilots in 1978, 1979 and 1981. Order at 14. Many issues of the Clipper Pioneers newsletter carried information about the suit, and it was discussed at a number of Clipper Pioneers meetings. Declaration of W.R. Chamberlin, SRE at 179–81. Information about the suit was also included in numerous Pan Am annual reports to shareholders. Order at 14. In addition, news of the two disapproved settlements was reported widely in the press. Joint Excerpts of Record at 156–60. Finally, information about recent age discrimination suits against Pan Am and other airlines appeared in at least one issue of the newsletter of the Airline Pilots Association, in a 1986 issue of the American Association of Retired Persons News Bulletin, and in several issues of the magazine *Aviation Week and Space Technology.* Declaration of Daniel Mulholland, SRE at 190–92.

After Pan Am exhausted its appeals from the order disapproving the second proposed settlement, the district court granted partial summary judgment in favor

of the EEOC. *EEOC v. Pan American World Airways, Inc.*, Nos. C–81–3636–RFP, C–81–4590–RFP (N.D.Cal. July 31, 1987) (memorandum and order granting partial summary judgment). The court found that the EEOC had established a prima facie case of age discrimination, *id.* at 9, and held that Pan Am could offer at trial only one of its three proposed affirmative defenses, that its employment policies were based on reasonable factors other than age. *Id.* at 10–16; *see* 29 U.S.C. § 623(f)(1) (1982 & Supp. V 1987).

Trial commenced on December 7, 1987. After each side had presented its evidence, just before closing arguments, Pan Am, the EEOC and 63 of the named claimants who had been allowed to participate as amici curiae[2] submitted a third proposed settlement agreement and consent decree. The decree provides that Pan Am will pay $17.2 million to a maximum of 106 claimants: the 91 listed in the fifth (and last) amended complaint and 15 named claimants who retired after the fifth amended complaint had been filed. The decree also provides that Pan Am will allow pilots to become flight engineers when they turn 60. In addition, paragraph 17 of the decree states: "Upon final entry of this Settlement Agreement and Consent Decree, this action is hereby dismissed with prejudice in its entirety as to all persons listed in Exhibits A and C *and as to any other pilots who would have remained in Pan Am's employment but for Pan Am's refusal prior to February 1, 1988, to employ that person after he reached the age of 60."* *EEOC v. Pan American World Airways, Inc.*, No. C–81–3636 RFP (N.D.Cal. Feb. 3, 1988) (settlement agreement and consent decree) (emphasis added).

As with other aspects of the case, this agreement received widespread publicity. King, Keith and six other former pilots (the objectors) who had not previously been in-

volved in the lawsuit filed motions seeking inclusion in the settlement class. Both King and Keith claimed to have heard about the suit for the first time in February 1988, when they read newspaper accounts of the settlement. Pan Am, the EEOC and the 106 named claimants all opposed inclusion of the objectors in the settlement. They claimed that enlarging the class of pilots participating in the settlement would disrupt the delicate compromise embodied in the decree by diluting the named claimants' recovery or opening up the possibility that Pan Am's exposure could exceed the agreed-upon $17.2 million.

After holding a lengthy hearing on the fairness of the proposed decree, the district court rejected the objectors' requests for inclusion and approved the decree. The court held that an EEOC enforcement action terminates an individual employee's right to bring an ADEA suit on his own behalf, making the EEOC the sole cognizable plaintiff. Order at 20–21. In addition, the EEOC was not required to bring suit on behalf of any particular grievant or to notify victimized employees of their right to share in an EEOC recovery. *Id.* at 22–24. According to the court, the EEOC's discretion in conducting ADEA enforcement actions is limited only by the requirements of due process and, therefore, it must notify potential claimants before depriving them of the right to bring or join a lawsuit. *Id.* at 24. The court concluded, however, that the notice provided by the EEOC was constitutionally adequate, and that the objectors had actual knowledge of the lawsuit long before coming forward in 1988. *Id.* at 26–30.

King and Keith are the only objectors who appeal. Everyone else—the EEOC, Pan Am, and the amici claimants—have lined up in support of the district court's judgment.

---

**2.** Fifty-seven of the claimants moved to intervene as plaintiffs, alleging that the EEOC was not adequately representing their interests; the claimants argued that the EEOC was biased in favor of currently employed pilots at the expense of former pilots. The court denied this motion, but permitted these claimants to partic-

ipate as amici. *EEOC v. Pan American World Airways, Inc.*, No. C–81–3636 RFP (N.D.Cal. Dec. 3, 1987) (memorandum and order denying claimants' motion to intervene as full-party plaintiffs and granting claimants' motion to participate at trial as amici). Six claimants were apparently added to this group afterwards.

## II

■ Ordinarily, people who were not parties before a district court may not appeal the court's judgment. We nevertheless permit nonparties to appeal where they actually participated in proceedings before the district court and the equities weigh in favor of hearing the appeal. *See, SEC v. Wencke*, 783 F.2d 829, 834 (9th Cir.), *cert. denied sub nom., DeLusignan v. Gould*, 479 U.S. 818, 107 S.Ct. 77, 93 L.Ed.2d 33 (1986); *In re Grand Jury Proceedings (Conforte)*, 643 F.2d 641, 643 (9th Cir.1981). A nonparty must, of course, also have a personal stake in the outcome of the litigation discernible from the record before it will be allowed to maintain an appeal. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 543–44, 106 S.Ct. 1326, 1332–33, 89 L.Ed.2d 501 (1986).

King and Keith meet these requirements. While they are not parties, they raised their claims in the district court and the court considered and denied their requests on the merits. The equities favor our hearing the appeal; it would be a cruel irony to bar an appeal from an order denying permission to participate in litigation for the very reason that the would-be appellants did not participate below. Finally, King's and Keith's interest in the outcome of the litigation is obvious: If they are permitted to participate in the settlement they stand to recover a substantial amount. Moreover, the consent decree approved by the district court purports to bar them from future litigation. Accordingly, we will exercise our discretion to entertain this appeal.

## III

Objectors King and Keith raise two broad objections to the settlement and consent decree: First, they argue that the decree denies them their day in court by dismissing with prejudice any ADEA claims they may have had against Pan Am; and second, they contend that the court erred in finding the consent decree otherwise fair and reasonable. Moreover, objector King also suggests that the district court erred in denying his request to inter-

vene in the EEOC's litigation under Fed.R. Civ.P. 24. We consider these contentions in turn. But, recognizing that it is impossible to review the district court's judgment without a thorough understanding of the EEOC's role in enforcing the ADEA, we begin our analysis by examining the statutory scheme under which the EEOC brought this action.

### A. The Statutory Scheme

Congress enacted the Age Discrimination in Employment Act in 1967 to restrict arbitrary discrimination on account of age. Pub.L. No. 90–202, 81 Stat. 602 (1967) (codified at 29 U.S.C. §§ 621–634). The ADEA prohibits numerous employment practices including failure to hire, discharge, denial of employment and discrimination with respect to terms or conditions of employment because of an individual's age. *See* B. Schlei & P. Grossman, *Employment Discrimination Law* 485–86 (2d ed. 1983). Because it borrows many provisions from the Fair Labor Standards Act and Title VII, the ADEA is "something of a hybrid, reflecting, on one hand, Congress' desire to use an existing statutory scheme and a bureaucracy with which employers and employees would be familiar and, on the other hand, its dissatisfaction with some elements of each of the pre-existing schemes." *Lorillard v. Pons*, 434 U.S. 575, 578, 98 S.Ct. 866, 869, 55 L.Ed.2d 40 (1978). Of primary concern to us are the ADEA's enforcement provisions, which are closely patterned after those of the FLSA.

Section 7 of the ADEA, 29 U.S.C. § 626 (1982), details the means by which the substantive provisions of the ADEA may be enforced. Section 7(b), 29 U.S.C. § 626(b), incorporates the remedies and procedures contained in sections 16 and 17 of the FLSA. 29 U.S.C. §§ 216, 217 (1982 & Supp. V 1987). These sections, in turn, contemplate two methods of enforcement: FLSA section 16(b) creates a vehicle, wholly apart from Fed.R.Civ.P. 23, for employees to bring individual or class actions for damages, while the EEOC may bring damages suits under section 16(c). Section 17 empowers district courts to provide injunc-

tive relief. Perhaps in an abundance of caution, Congress also authorized private litigation within the ADEA itself. Section 7(c)(1), 29 U.S.C. § 626(c)(1), provides that "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter."

The statutory structure plainly gives the EEOC the dominant role in enforcing the ADEA. Both section 7(c) of the ADEA and section 16(b) of the FLSA expressly foreclose subsequent litigation by or on behalf of an employee following the commencement of an EEOC enforcement action. Section 7(c)(1) of the ADEA states that "the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter." Section 16(b) of the FLSA contains a similar provision: "The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor[3] in an action under section 217 of this title."[4] Likewise, sections 16(b) and

(c) foreclose the right of an employee to participate as a party plaintiff in an EEOC enforcement action.

Suits brought by the EEOC thus have priority over private suits: Once the EEOC commences an age discrimination suit, the right to commence a private action twice authorized by the ADEA ceases to exist. ADEA private lawsuits therefore are secondary in the statutory scheme to administrative remedies and suits brought by the Commission. *See Dean v. American Sec. Ins. Co.*, 559 F.2d 1036, 1038 (5th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 841 (3d Cir.1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).[5]

The enforcement provisions of the ADEA, including the automatic termination of an employee's private rights upon the commencement of an EEOC action, are an integral part of the ADEA's remedial scheme; their purpose is "to relieve the courts and employers of the burden of litigating a multiplicity of suits based on the same violations of the act by an employer." S.Rep. No. 145, 87th Cong., 1st Sess. (1961), *reprinted in* 1961 U.S.Code Cong.

**3.** Prior to 1978, both the ADEA and the FLSA authorized suits by the Secretary of Labor rather than the EEOC. In 1978 the Secretary's functions were transferred to the EEOC, and ADEA § 7 was amended to reflect that fact. *See* Reorganization Plan No. 1 of 1978, § 2, 43 Fed.Reg. 19,807, 92 Stat. 3781 (reprinted in App. 1, Title 5, U.S.C.A.). Although the Reorganization Act was found to be unconstitutional because it contained a legislative veto provision, *see EEOC v. Westinghouse Elec. Corp.*, 765 F.2d 389, 390–91 (3d Cir.1985), Congress subsequently ratified the transfer of enforcement authority to the EEOC. *See* Pub.L. No. 98–532, 98 Stat. 2705 (1984). Inexplicably, however, the FLSA continues to refer only to the Secretary of Labor, even though public age discrimination suits brought pursuant to its enforcement provisions are currently carried out by the EEOC.

**4.** Other courts have found no distinction between the terms "commencement" as used in ADEA § 7(c) and "filing of a complaint" as used in FLSA § 16(b). *See, e.g., EEOC v. Gilbarco, Inc.*, 615 F.2d 985, 988–90 (4th Cir.1980); *see also Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 759, 99 S.Ct. 2066, 2073, 60 L.Ed.2d 609 (1979) (under ADEA § 14(b), 29 U.S.C. § 633(b), "com-

mencement" means the filing of a complaint). We have no occasion to disagree with these holdings.

**5.** The ADEA also contains other limitations on an individual's right to bring an enforcement action. Section 7(d) prohibits employees from commencing a private civil action under the Act until 60 days after filing with the EEOC a charge alleging unlawful discrimination. 29 U.S.C. § 626(d) (1982). During that time, the Commission must notify all potential defendants and seek to eliminate the alleged unlawful practices through "informal methods of conciliation, conference, and persuasion." *Id.* Only if the Commission's efforts to rectify the situation fail may an employee commence a private action. *See id.; see also* Report of the Committee on Labor and Public Welfare, S.Rep. No. 723, 90th Cong., 1st Sess. (1967), *reprinted at,* 113 Cong.Rec. 31,249, 31,250 (Nov. 6, 1967). Even then, if the EEOC commences an enforcement action before an individual employee does, the right of that individual to bring a private action is abrogated.

& Ad.News 1620, 1659 (discussing FLSA Section 16(b)). Moreover, these provisions reduce the danger of inconsistent adjudications because the claims of all employees who have not already initiated private actions are consolidated at the time the EEOC files its suit. *See Donovan v. University of Texas at El Paso*, 643 F.2d 1201, 1207–08 (5th Cir.1981). Finally, they preclude res judicata problems because the EEOC judicially binds all employees on whose behalf it sues. *Id.* at 1208.

Mindful of this complex statutory structure, we proceed to consider King and Keith's objections to the consent decree approved by the district court.

### B. The Objectors' Challenges

Objectors King and Keith contend that the settlement is unfair because it extinguishes their rights under the ADEA without providing them any relief. In particular, they point to paragraph 17 of the consent decree, which dismisses with prejudice any rights they might have had to bring private ADEA actions against Pan Am. Objectors argue that the EEOC has denied them due process by settling away their legal rights without proper notice or consent, and without giving them anything in exchange.

█ On its face, we find the objectors' claim appealing. It is fundamental to our notions of due process that a consent decree cannot prejudice the rights of a third party who fails to consent to it. *See Firefighters v. City of Cleveland*, 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986); *United States v. Ward Baking Co.*, 376 U.S. 327, 334–35, 84 S.Ct. 763, 768–69, 11 L.Ed.2d 743 (1964). This rule is founded in our "deep-rooted historic tradition that everyone should have his own day in court." 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4449 at 417 (1981). "[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party ... without that party's agreement. A court's approval of a consent decree between some of the parties there-

fore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor." *Firefighters*, 478 U.S. at 529, 106 S.Ct. at 3079. Likewise, a consent decree cannot prejudice the rights of persons who are strangers to the proceeding, even though they may have actual knowledge of the settlement or the underlying litigation. *Martin v. Wilks*, —— U.S. ——, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989).

Were this the end of our inquiry, King and Keith would surely prevail in their effort to overturn the district court's order approving the settlement and consent decree. Although they were permitted to intervene for the limited purpose of challenging the consent decree, neither King nor Keith were parties to the settlement; nor did they agree to its terms. The consent decree therefore could not prejudice their rights without offending due process.

█ Contrary to the objectors' contentions, however, the consent decree does not in fact prejudice any rights they have under the ADEA. As explained earlier, an individual employee's right to bring a private ADEA action terminates upon the EEOC's commencement of an enforcement action on his behalf. See pp. 1504–06 *supra*. The EEOC sought recovery in this suit on behalf of "any ... persons who would have remained in the Company's employment past the age of 60 in a Flight Engineer position but for the Company's refusal to employ that person after he reached the age of 60." EEOC's Complaint, CR 1 at 2. The objectors do not dispute that they fall within this category of persons; indeed, in order to prevail in an ADEA claim against Pan Am they would have to prove that they fit precisely the description of persons on whose behalf the EEOC brought its suit. An EEOC age discrimination suit commences with the filing of the complaint, regardless of whether the complaint names specific individual employees. *See EEOC v. Gilbarco, Inc.*, 615 F.2d 985, 990 (4th Cir.1980).[6] King and

---

**6.** Compare *Donovan v. Crisostomo*, 689 F.2d 869, 875 (9th Cir.1982), which held that, for

Keith's rights to bring any ADEA claims against their former employer therefore terminated on September 15, 1981, when the EEOC filed its complaint on their behalf.

By its plain language, paragraph 17 of the consent decree merely confirms the effect of the Commission's action, barring King, Keith and similarly situated individuals from bringing their own private ADEA actions against Pan Am.[7] Because the EEOC's lawsuit already barred any such suits, paragraph 17 is mere surplusage; it does not prejudice the objectors' rights because they had no rights left to prejudice.[8]

■ The objectors, however, also appear to challenge as unconstitutional the manner in which the EEOC brought its enforcement action. They contend that due process required the EEOC to inform them not only that the Commission had brought this action, but also that, by doing so, it had extinguished their private rights under the ADEA. While their arguments are not entirely clear, the objectors apparently contend that, had they received this type of notice, they would have informed the EEOC that they wanted to participate in its lawsuit against Pan Am and, presumably, would have been entitled to share in the settlement. We reject this argument, concluding that the notification procedures adopted by the EEOC were sufficient to satisfy the requirements of due process.[9]

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), established that state action affecting individual property rights generally must be accompanied by notification of that action: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, un-

purposes of statute of limitations, an EEOC enforcement action commences when the Commission identifies individual employees by name. However, the result in *Donovan* was compelled by specific language in FLSA section 16(c) regarding the commencement of an EEOC action for statute of limitations purposes:

> In determining when an action is commenced by the Secretary of Labor under this subsection for the purposes of the statutes of limitations provided in section 255(a) of this title, it shall be considered to be commenced in the case of any individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint, or if his name did not so appear, on the subsequent date on which his name is added as a party plaintiff in such action.

29 U.S.C. § 216(c) (1982). There is no analogous statutory language regarding the ADEA's antiduplicative suit provisions. Thus, for purposes of extinguishing a claimant's private ADEA rights, the EEOC need only specify with reasonable certainty on the face of the complaint that its action has been filed on behalf of that employee. This is precisely what the EEOC did here. We read Congress's careful choice of language as requiring the EEOC to do nothing more to foreclose subsequent private litigation.

7. Some courts have held that the EEOC's commencement of an ADEA enforcement action does not affect those private suits already commenced. *See EEOC v. Chrysler Corp.,* 759 F.2d 1523, 1525 (11th Cir.1985); *EEOC v. Eastern Airlines, Inc.,* 736 F.2d 635, 639–41 (11th Cir. 1984); *Donovan v. University of Texas at El Paso,* 643 F.2d 1201, 1207 (5th Cir.1981); *but see Jones v. City of Janesville,* 488 F.Supp. 795, 797

(W.D.Wis.1980). However, nothing in the record indicates that any former Pan Am pilots, including King or Keith, had brought private ADEA actions against Pan Am prior to the EEOC's commencement of this action.

8. Had paragraph 17 barred *all* claims against Pan Am, including those arising under state law, our analysis would be very different. The EEOC has no power to extinguish state claims or state statutory rights. *Dunlop v. Pan American World Airways, Inc.,* 672 F.2d 1044, 1049 n. 7 (2d Cir.1982).

9. In order for governmental action to raise due process concerns, the action must affect individual life, liberty or property interests. *See Board of Regents v. Roth,* 408 U.S. 564, 569–72, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). The objectors contend the EEOC's enforcement action and resulting settlement decree deprived them of a cognizable property right in the form of private ADEA actions against Pan Am. The district court found that, although the ADEA's three-year statute of limitations period had passed, 29 U.S.C. § 255(a), 626(e) (1982), the objectors might have been able to bring their own ADEA suit under the doctrine of equitable tolling, but for the fact the EEOC's commencement of this action had extinguished their rights. Order at 26. The district court held that, even if equitable tolling did apply, the procedures employed by the EEOC did not deny them due process. We assume, without deciding, that the objectors were entitled to invoke equitable tolling and therefore, but for the EEOC's action, would have residual rights under the ADEA.

der all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. Notice must be such that "one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id.* The purpose of notice, therefore, is to enable individuals to know of governmental actions affecting their rights so that they may act to protect those rights.

■ Here, we find no due process violation in the EEOC's decision to select beneficiaries in the settlement on the basis of responses to the notice it sent out.[10] The notice certainly disclosed to potential claimants the existence of the lawsuit and advised them that failure to contact the EEOC could lead to exclusion from any recovery resulting from the Commission's efforts. While King and Keith claim that they did not receive the EEOC's notice, the district court found that Keith had in fact

received it, and that both objectors were familiar with the substance of the notice. Actual knowledge of the pendency of an action removes any due process concerns about notice of the litigation. *See Farwest Steel Corp. v. Barge Sea–Span 241*, 769 F.2d 620, 623 (9th Cir.1985); *Lehner v. United States*, 685 F.2d 1187, 1190–91 (9th Cir.1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 790 (1983).[11]

■ That the notice did not advise King and Keith that they had lost their right to bring private actions under the ADEA is of no consequence. Section 7(c) of the ADEA and section 16(b) of the FLSA are not unlike statutes of limitations, barring the filing of any private ADEA lawsuit after the commencement of an EEOC enforcement action. It is well established that due process does not require the government to notify individuals of the existence of such self-executing bars to litigation. *See Atkins v. Parker*, 472 U.S. 115, 130, 105 S.Ct.

**10.** We recognize that the Fifth Circuit has held that due process does not require the Secretary of Labor (now the EEOC) to provide notice to employees on whose behalf it sues under section 17(c) of the FLSA. *Donovan v. University of Texas at El Paso*, 643 F.2d 1201 (5th Cir. 1981). *Donovan* recognized that employees are powerless to request, consent, compromise or otherwise affect pending enforcement actions, because their substantive rights are extinguished as soon as the government files suit. *Id.* at 1208. Moreover, employees have no right to opt into or out of a public enforcement action. *Id.* at 1207–08. In fact, the Fifth Circuit noted, Congress actually has deleted a provision from the FLSA requiring the government to obtain an employee's consent before suing for backpay on his behalf. *Id.* at 1205–06. *See* 29 U.S.C. § 216(c) (1964) (amended Pub.L. No. 93–259 § 26, 88 Stat. 61, 73 (1974)). *See also EEOC v. Chrysler Corp.*, 546 F.Supp. 54, 73–75 (E.D.Mich. 1982), *aff'd*, 733 F.2d 1183 (6th Cir.1984). Thus, *Donovan* concluded, "no purpose—neither fundamental [fairness] nor due process requirements . . .—would be served by notification procedures like those found in Rule 23." *Id.* at 1208. Since the EEOC did provide notice in this case, we need not decide whether the *Donovan* rule applies in this circuit.

**11.** The objectors' reliance on *General Telephone Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), for the proposition that the EEOC may not bind parties without their consent is inapposite. In *General Telephone*, the Supreme Court held it was "unconvinced" that

the EEOC could bind all employees on whose behalf it brings suit under section 706(a) of Title VII of the Civil Rights Act of 1964. 446 U.S. at 333, 100 S.Ct. at 1707. However, this is not a Title VII action, and the enforcement provisions of the ADEA are not analogous to those of Title VII. While Title VII encourages private suits, sections 7(c)(1) of the ADEA and 16(b) of the FLSA explicitly preclude such actions subsequent to the EEOC's commencement of an enforcement action. Title VII has no analogous provision.

Objector King's reliance on *Partlow v. Jewish Orphans' Home of Southern California*, 645 F.2d 757 (9th Cir.1981), is equally misplaced. *Partlow* was not an EEOC action at all, it was a private opt-in type class action for unpaid overtime wages under FLSA section 16(b). The court held that an FLSA class member who is not notified of and does not consent to a private action brought on his behalf is not bound by an adverse judgment and is not barred from filing an individual claim. *Id.* at 759. While *Partlow* would have helped the objectors had this been a private opt-in lawsuit, it is inapposite to suits brought by the EEOC. The language in ADEA section 7(c)(1) and FLSA section 16(b) bars only those private suits brought after an EEOC action. The commencement of a private opt-in type class action, as in *Partlow*, does not extinguish the right of another aggrieved employee to bring a subsequent private action unless that employee has affirmatively opted into the litigation. *See Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir.1977).

2520, 2529, 86 L.Ed.2d 81 (1985) ("All citizens are presumptively charged with knowledge of the law."); *Texaco, Inc. v. Short,* 454 U.S. 516, 533–37, 102 S.Ct. 781, 794–96, 70 L.Ed.2d 738 (1982). When a rule of law uniformly affects all similarly situated citizens, as does the ADEA's bar to subsequent litigation, an individual need not be given advance notice before the rule may operate. *Texaco,* 454 U.S. at 537, 102 S.Ct. at 796. Therefore, it was sufficient for the EEOC to inform the objectors that it had commenced litigation on their behalf; it had no constitutional obligation to inform them of the legal consequences of its having done so. That having been said, we note that the EEOC would not be remiss in including this information in future notice to potential claimants.[12]

■ King and Keith also challenge the settlement on the merits. Specifically, they take issue with the fact that, while cutting off their rights, the settlement agreement provides them no benefits at all. This argument, however, is foreclosed by our discussion above. The objectors had no right to participate in the EEOC's lawsuit because they expressed their interest too late in the day. The objectors therefore have no standing to challenge the terms of the settlement agreement. Whether we approve the settlement or disapprove it, it will do the objectors absolutely no good. Because all parties to the settlement agreement—the EEOC, Pan Am, and the amicus claimants—are satisfied with the settlement, we see no basis for reviewing it on the merits.[13]

*C. Denial of King's Motion to Intervene*

■ Objector King contends that the district court erred in denying his motion to intervene as a full party plaintiff, rather than merely for the limited purpose of challenging the settlement agreement. Under Fed.R.Civ.P. 24(a), a court must permit a nonparty to intervene in an action when a statute confers an unconditional right to intervene, or "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Neither of these standards is met here.

The ADEA and the FLSA do not grant King an unconditional right to intervene. *See Mitchell v. McCorstin,* 728 F.2d 1422, 1423 (11th Cir.1984). In fact, sections 16(b) and (c) specifically preclude an employee from becoming a party plaintiff in an EEOC enforcement action. Nor does King have an interest in the litigation to protect. As explained previously, King's rights under the ADEA terminated upon the commencement of the EEOC's action. *See* pp. 1504–06 *supra.* Thus, King has no interest with which to support his intervention as a party plaintiff under Rule 24(a). *See Donovan v. University of Texas at El Paso,* 643 F.2d at 1208 ("in § 17 suits, intervention by party plaintiffs is not allowed, mandating instead that the Secretary be the sole party plaintiff"); *see also EEOC v. Chrysler Corp.,* 50 Empl.Prac.Dec. (CCH) ¶ 39,149 at 58,295, 58,296–97, 49 Fair Empl. Prac.Cas. (BNA) 1439, 1440 (E.D.Mich. 1989); *EEOC v. Boeing Co.,* 109 F.R.D. 6, 9–10 (W.D.Wash.1985); *EEOC v. Consolidated Edison of N.Y.,* 557 F.Supp. 468, 472 (S.D.N.Y.1983).

King's request for permissive intervention under Fed.R.Civ.P. 24(b) likewise fails. A party seeking permissive intervention must demonstrate a basis for federal jurisdiction independent of the court's jurisdic-

---

12. Of course, no notice, even in the form requested by the objectors, would have enabled the King and Keith to protect their rights to bring private ADEA actions against Pan Am. The objectors' rights to sue Pan Am terminated automatically upon the EEOC's filing of its complaint; nothing they could have said or done after that point would have revived these rights. Whatever due process may require, it certainly does not require a futile act.

13. It is an interesting question whether the individual employees who benefit from the settlement have standing to challenge the settlement agreement, as they too have no vested rights in the lawsuit. Because none of the amici or other employees who benefited from this settlement have objected, we need not resolve this issue.

tion over the underlying action. *EEOC v. Nevada Resort Ass'n,* 792 F.2d 882, 886 (9th Cir.1986); *Blake v. Pallan,* 554 F.2d 947, 955–56 (9th Cir.1977). Because the EEOC's commencement of its enforcement action terminated any rights King may have had against Pan Am, King can claim no substantive rights over which the district court would have had jurisdiction. *See Chrysler,* 50 Empl.Prac.Dec. (CCH) ¶ 39,149 at 58,297, 49 Fair Empl.Prac.Cas. (BNA) at 1441; *Boeing,* 109 F.R.D. at 10. Without a jurisdictional basis, there can be no intervention under Rule 24(b).

### Conclusion

We affirm the judgment of the district court in its entirety.