**Ronald DeMARCO, Complainant–Appellant,**

v.

**COLORADO LIMITED GAMING CONTROL COMMISSION, Respondent–Appellee.**

**No. 92CA0329.**

Colorado Court of Appeals, Div. III.

May 6, 1993.*

---

* Opinion previously announced as non-published

March 18, 1993, is now selected for publication.

Keller, Wahlberg & Morrato, P.C., Lionel Dunievitz, Denver, for complainant-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Susan Beck–Ferkiss, Asst. Atty. Gen., Denver, for respondent-appellee.

Opinion by Judge CRISWELL.

Petitioner, Ronald DeMarco, applied to the Colorado limited gaming control commission for a limited gaming support license pursuant to § 12–47.1–501(1)(d), C.R.S. (1991 Repl.Vol. 5B). The commission denied his application solely because he had been convicted of a gambling-related misdemeanor more than twenty years before his application, and he seeks our review of that decision. Because we conclude that the pertinent statute, § 12–47.1–510(1)(c)(II), C.R.S. (1991 Repl.Vol. 5B), required the commission to deny his application and that such statute does not offend against petitioner's constitutional rights, we affirm the commission's order.

Pursuant to the constitutional provision adopted by the people in 1990, Colo. Const. art. XVIII, § 9, the Colorado General Assembly created the commission, § 12–47.1–301, C.R.S. (1991 Repl.Vol. 5B), and delegated to it the authority to issue licenses to those persons involved in conducting limited gaming. Section 12–47.1–302(1)(h), C.R.S. (1991 Repl.Vol. 5B). One of the

licenses that may be issued is a "support" license, required of all employees "employed in the field of limited gaming." Section 12–47.1–501(1)(d).

The general assembly has also established certain criteria for the issuance of such licenses. Thus, § 12–47.1–510(1)(c), provides that the commission "*shall* deny a license to any applicant" if such applicant has sustained a:

(c) Conviction ... of any of the following:

(I) Service of a sentence upon conviction of a felony ... within ten years prior to the date of the application ... notwithstanding the provisions of section 24–5–101, C.R.S.;

(II) *Any gambling-related* offense or theft by deception;

(III) Any crime involving fraud or misrepresentation, notwithstanding the provisions of section 24–5–101, C.R.S. (emphasis supplied)

Section 24–5–101, C.R.S. (1988 Repl.Vol. 10A) is a general statute that authorizes licensing boards to grant a license to an applicant notwithstanding a previous felony conviction. The extent to which, if at all, this statute may be applicable under § 12–47.1–510(1)(c)(II) to a prior conviction of any gambling-related offense or theft by deception has not been raised by petitioner. Hence, that issue is not presented here.

Some 23 years before applicant applied for a support license, he had been convicted of a misdemeanor, known as "bookmaking," under a California statute. Testimony at the hearing before the commission established that such conviction was based upon the applicant's employment by a "bookie" to take wagers on California horse races by telephone, to record them on slips of paper, and to report them to his employer when requested.

The applicant conceded, the commission found, and we agree that applicant's previous conviction was for a "gambling-related offense" within the meaning of § 12–47.1–510(1)(c)(II). Hence, the commission, although concluding that applicant was otherwise of good character and expressing its

"reluctance" to do so, denied applicant the license applied for.

Before us, applicant does not seriously argue that the statute was misapplied by the commission. He argues, however, that § 12–47.1–510(1)(c)(II) is unconstitutional because it denies him the right to engage in a lawful profession and because it arbitrarily discriminates between those persons convicted of gambling-related offenses, theft by deception, fraud, or misrepresentation, on the one hand, and all other offenses, on the other. We disagree with both assertions.

First, while it is true that the state may not erect arbitrary barriers to a person's engaging in a lawful business, *see Battaglia v. Moore*, 128 Colo. 326, 261 P.2d 1017 (1953), such an argument here, as a separate assertion, begs the question. If the statutory provision disqualifying persons who have previous gambling-related convictions is reasonably related to a legitimate state purpose and does not otherwise rest upon arbitrary considerations, it may properly be applied to prevent applicant's licensure. On the other hand, if it arbitrarily discriminates against applicant, or otherwise has no relationship to the public health, safety, and welfare, it cannot be applied to him. The basic issue, therefore, is whether the provision comports with considerations of substantive due process of law and equal protection, given the circumstances here. *See Van Gerpen v. Peterson*, 620 P.2d 714 (Colo.1980).

Petitioner's claim of a substantive due process and equal protection violation centers on the fact that under § 12–47.1–510(1)(c), while persons convicted of any gambling-related offense, theft by deception, fraud, or misrepresentation, forever bars the person convicted from receiving a gaming license, convictions for far more serious crimes will serve as bars only for a period of ten years from the date that the persons convicted of such offenses ceases to serve the sentence imposed. He asserts that, in his case, barring him from obtaining a license solely because of his conviction of a misdemeanor more than 20 years ago denies him his right to substantive due

process of law and unlawfully discriminates against him. We disagree.

It has been recognized that legalized gambling depends for its success upon both the honesty and the integrity of those conducting the games *and* the public's *perception* that the games are being conducted honestly. *See Shoemaker v. Handel*, 795 F.2d 1136, 1142 (3d Cir.1986) ("Public confidence forms the foundation for success of an industry based on wagering;" hence, random drug-testing of jockeys permissible).

Thus, statutes which provide for the detailed regulation of those involved in the legalized gambling industry are designed both to assure that honest wagering actually takes place and to maintain public confidence that such is the case. *See State v. Glusman*, 98 Nev. 412, 651 P.2d 639 (1982), *appeal dismissed*, 459 U.S. 1192, 103 S.Ct. 1170, 75 L.Ed.2d 423 (1983) (state's policy as reflected in statutes is to assure continued public confidence by strict regulation).

The statute here directs its lifetime disqualification at those persons who have either been convicted of crimes involving duplicity or who have acted in defiance of laws regulating gambling. While there may be crimes which are *generally* considered more serious than gambling-related offenses, a crime involving dishonesty or a disregard of gambling regulations strikes most directly at the foundation upon which a successful gaming industry must be based. And, this consideration was the basis for this statutory provision. *See* hearing before conference committee on Senate Bill 149 on August 6, 1992.

We shall assume that an applicant for a gambling license, in the capacity as an applicant, has a sufficient property or liberty interest in the license applied for so that that applicant can assert a due process deprivation claim. *But see State v. Rosenthal*, 93 Nev. 36, 559 P.2d 830 (1977), *appeal dismissed*, 434 U.S. 803, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977) (because gambling is a privilege that may be withheld by the state, no federal due process rights are implicated in a license denial). Nevertheless, a statute does not offend against substantive due process principles so long as its provisions are reasonably related to the public health, safety or welfare. *People v. Becker*, 759 P.2d 26 (Colo.1988) (restriction against employee of liquor licensee soliciting customers for anything of value reasonably related to a proper legislative purpose).

Because we conclude that the restriction here is reasonably related to the proper goal of assuring both honest gaming and the public perception that such gaming is honest, we conclude that the statute does not offend against any principle of due process.

■ Likewise, we perceive no equal protection violation.

Because persons who have been convicted of any of the offenses described in § 12–47.1–510(1)(c)(II) and (III) do not constitute a "suspect class" and because the "right" (if it be such) to engage in gambling is not a fundamental one, the statute cannot be considered to be invalid if it is "rationally based on differences that are real and not illusory" and if it is "reasonably related to a legitimate state interest." *Higgs v. Western Landscaping & Sprinkler Systems, Inc.*, 804 P.2d 161, 164 (Colo.1991), citing *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

Our previous discussion has already addressed each of these considerations. A conviction of a gambling-related offense is, within the context of a concern for the public confidence in regulated gambling, rationally different from convictions of other offenses. Hence, because the provision addresses a proper and legitimate state interest, it does not offend against equal protection principles.

Finally, petitioner argues that, by denying him the support license, the commission applied the statute to him in an unconstitutional manner. We reject this assertion.

■ We recognize that a statute, valid on its face, may be applied so as to result in the deprivation of constitutional rights, either because of changed circumstances or

for other reasons. *See People v. Albrecht,* 145 Colo. 202, 358 P.2d 4 (1960).

Here, however, the statutory provision was applied in precisely the manner that the General Assembly intended. Hence, because the statute is facially valid, its application in the intended manner cannot give rise to a separate constitutional claim. *See State v. DeFoor,* 824 P.2d 783 (Colo. 1992, C.J. Rovira, concurring). And, this court cannot, under the guise of interpreting the constitution, change the public policy established by the legislature so long as that policy is properly related to the public health, safety, or welfare.

Order affirmed.

NEY and TAUBMAN, JJ., concur.