David M. MOYA, Appellant,

v.

**COLORADO LIMITED GAMING CONTROL COMMISSION,**
Appellee.

No. 92CA1937.

Colorado Court of Appeals,
Div. III.

Feb. 10, 1994.

Sarah A. Hopkins, Sandra Saltrese–Miller, Denver, for appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Susan L. Beck– Ferkiss, Asst. Atty. Gen., Denver, for appellee.

Opinion by Judge METZGER.

David M. Moya (applicant) appeals the order of the Colorado Limited Gaming Control Commission denying his application for a limited gaming support license. We affirm.

Acting in accordance with the Colorado Limited Gaming Act, § 12–47.1–101, et seq., C.R.S. (1991 Repl.Vol. 5B) (Gaming Act), applicant filed an application for a support license. *See* § 12–47.1–501(1)(d), C.R.S. (1991 Repl.Vol. 5B).

After conducting an investigation, the Division of Gaming denied the application pursuant to § 12–47.1–801(2), C.R.S. (1991 Repl. Vol. 5B), based on applicant's criminal record which included seven arrests, conviction of three misdemeanors, and deferred sentences on two other misdemeanors. The Division concluded that applicant had not met his burden of proof by clear and convincing evidence that he was qualified for licensure because his criminal record established a pattern of disregard for lawful conduct.

Applicant immediately requested a hearing before the Commission. After an evidentiary hearing, basing its decision on his criminal record, the Commission determined that applicant was unsuitable to hold a limited gaming support license.

On appeal, applicant contends that (1) the Commission acted arbitrarily when it considered criminal convictions not specifically enumerated as licensing disqualification criteria under the provisions of the Gaming Act; (2) the Commission acted outside its authority when it denied his license based on his suitability for licensure; and (3) the Commission's order does not adequately specify the statutory authority or the facts it relied upon when making its decision to deny his license. We reject these contentions.

Because all procedures for renewal, issuance, denial, revocation, suspension, limitation, and modification of licenses are subject to the requirements of the Colorado Administrative Procedure Act (APA), we will employ the three-step analysis required for compliance with the APA in order to determine

whether the Commission acted properly when it denied applicant a license. *See* § 24–4–101, et seq., C.R.S. (1988 Repl.Vol. 10A).

Using that three-part analysis, we first must review the Gaming Act to ascertain whether it contains sufficient legislative standards and safeguards to protect against arbitrary administrative action by the Commission concerning the issuance of limited gaming licenses. Next, we must decide whether the Commission acted within its statutory authority in denying the application for a limited gaming support license. Finally, we must determine whether the Commission's order was legally sufficient and supported by substantial evidence.

## I.

■ The test for determining whether the General Assembly has established adequate legislative guidelines is whether the statutes are "sufficient to insure that administrative action will be rational and consistent in the first instance and that subsequent judicial review of the action is available and will be effective." *Cottrell v. City & County of Denver,* 636 P.2d 703, 709 (Colo.1981). Because even detailed standards give partial protection only, statutes should also provide for agency adoption of more specific rules and regulations to limit the exercise of broad discretionary power. *Elizondo v. Department of Revenue,* 194 Colo. 113, 570 P.2d 518 (1977).

■ When the General Assembly enacted the Gaming Act in 1991, it declared that the:

> success of limited gambling is dependent on public confidence and trust that licensed limited gambling is conducted honestly.... Public trust and confidence can be maintained only by strict regulation of all persons, locations, practices, associations, and activities related to the operation of licensed gaming establishments....

Section 12–47.1–102(1), C.R.S. (1991 Repl. Vol. 5B).

The legislative declaration provides further direction to the Commission by stating:

> It is the intent of the general assembly that, to achieve the goals set forth in subsection (1) of this section, the commission should place great weight upon the policies expressed in said subsection (1) in construing the provisions of this article.

Section 12–47.1–102(2), C.R.S. (1991 Repl. Vol. 5B). Therefore, the Gaming Act seeks both to assure that honest wagering takes place and to maintain public confidence that such is the case. *DeMarco v. Colorado Limited Gaming Control Commission,* 855 P.2d 23 (Colo.App.1993).

In addition, the Gaming Act created the Division to implement and supervise gaming in the state. Section 12–47.1–201, C.R.S. (1991 Repl.Vol. 5B). The Division's primary responsibilities include monitoring all gaming activities for compliance with the Gaming Act and licensing those persons who seek to establish, run, or support gaming facilities. *See* §§ 12–47.1–201 to 12–47.1–203, C.R.S. (1991 Repl.Vol. 5B). The Gaming Act also empowers the Division to conduct investigations into the character, record, and reputation of all applicants for limited gaming licenses. Sections 12–47.1–204(1)(f), C.R.S. (1991 Repl.Vol. 5B).

The Gaming Act further provides for the formation of the Commission, and, as required, the Commission has published a set of rules and regulations regarding limited gaming. *See* §§ 12–47.1–301 and 12–47.1–302, C.R.S. (1991 Repl.Vol. 5B); 12 Code Colo.Reg. 47.1–101, et seq. The Gaming Act also requires the Commission to review its regulations continuously and to change them when necessary both to prevent abuses and violations of the Act and to serve its true purpose and intent. Sections 12–47.1–302(1)(f) and 12–47.1–302(1)(d), C.R.S. (1991 Repl.Vol. 5B). Judicial review of the Commission's action is available pursuant to § 12–47.1–521, C.R.S. (1991 Repl.Vol. 5B).

The General Assembly has empowered the Commission to issue five types of gaming licenses, including the support license required for all gaming employees. Section 12–47.1–501, C.R.S. (1991 Repl.Vol. 5B). Once a license is issued, it expires within one year, subject to approval of an application for renewal. The license is further subject to

continuous review and may be revoked at any time. Sections 12–47.1–501 and 12–47.1–504, C.R.S. (1991 Repl.Vol. 5B).

To qualify for a license, an applicant must be twenty-one years of age, possess a suitable character, comply with all specific laws, rules, and regulations, submit proper application forms, and answer questions concerning personal history and finances, legal/illegal activities, and provide other information as required. Sections 12–47.1–505 and 12–47.1–515, C.R.S. (1991 Repl.Vol. 5B); 12 Code Colo.Reg. 301. The applicant "has the burden of proving his qualifications to the satisfaction of the commission." Section 12–47.1–505, C.R.S. (1991 Repl.Vol. 5B).

In addition to these licensing qualifications, the Gaming Act enumerates specific criteria that require automatic disqualification from licensing. *Compare* § 12–47.1–505 (qualifications for licensure) *with* § 12–47.1–510, C.R.S. (1991 Repl.Vol. 5B) (license disqualification criteria). For example, the Gaming Act's license disqualification criteria provide that the Commission "shall deny a license to any applicant" if the applicant has been convicted of (1) a felony within ten years before the application, (2) any gambling-related offense or theft by deception, or (3) a crime involving fraud or misrepresentation. Section 12–47.1–510(1)(c), C.R.S. (1991 Repl.Vol. 5B); *see also DeMarco v. Colorado Limited Gaming Commission, supra* (statutory requirement that the Commission deny gaming license application based solely on a twenty-year-old gambling-related misdemeanor conviction was constitutional).

The Gaming Act states that an applicant is also automatically disqualified for failing "to prove by clear and convincing evidence that the applicant is qualified in accordance with the provisions of this article." Section 12–47.1–510(1)(a), C.R.S. (1991 Repl.Vol. 5B). As stated previously, one qualification an applicant must prove by clear and convincing evidence is his or her suitability for licensure.

Suitability is defined in § 12–47.1–103(29), C.R.S. (1991 Repl.Vol. 5B) as "the ability to be licensed by the commission and, in relation to acts or practices, lawful acts or practices." Likewise, unsuitability is defined as follows:

the inability to be licensed by the commission because of prior acts, associations, or financial conditions, and, in relation to acts or practices, those which violate or would violate the statutes or rules or are or would be contrary to the declared legislative purposes of this article.

Section 12–47.1–103(30), C.R.S. (1991 Repl. Vol. 5B).

Thus, the Gaming Act not only declares the underlying policies for regulation of limited gaming, but also specifies the criteria, in numerous statutory provisions, by which the Commission must make its decisions. Additionally, the Act articulates the burden of proof and states that an applicant's failure to meet this burden results in automatic disqualification.

We conclude that the Gaming Act provides clear standards and specific guidance to the Commission by (1) directing the agency to establish rules and regulations; (2) providing for an inquiry into the criminal history of an applicant to determine whether a threat to the public interest, or to controlled gaming, exists; (3) squarely placing the burden of establishing qualification for licensing upon the applicant; and (4) providing for effective judicial review.

## II.

■ In regard to the second part of the analysis required by the APA, we reject applicant's contention that the Commission acted beyond its statutory authority when it considered criminal convictions not specifically enumerated as licensing disqualification criteria by the provisions of the Gaming Act.

■ Courts should construe statutes so as to effectuate the presumed legislative policy motivating the enactment. *People v. Schuett*, 833 P.2d 44 (Colo.1992).

As this court noted in *DeMarco v. Colorado Limited Gaming Commission, supra*, statutes that provide for detailed regulation of those involved in the legalized gambling industry are designed both to assure that honest wagering takes place and to maintain public confidence that such is the case. To that end, in addition to all other conditions and requirements, the General Assembly has empowered the Commission to approve or deny any application for licensing "on the

basis of whether it deems the applicant a suitable person to hold the license applied for." Section 12–47.1–505. As stated previously, the General Assembly has defined the terms "suitability" and "unsuitability." *See* §§ 12–47.1–103(29) and (30), C.R.S. (1991 Repl.Vol. 5B). Thus, it is apparent that the Commission has statutory authority to consider any criminal history of an applicant that could be inimical to the purposes of the Gaming Act; that authority would include an examination of the offenses at issue here.

### III.

In regard to the third part of the APA analysis, in order to find that an administrative agency has acted arbitrarily, a reviewing court must find that no substantial evidence exists in the record to support its decision. *Schindelar v. State Board of Veterinary Medicine,* 672 P.2d 1021 (Colo.App. 1983). There must be a clear error of judgment and a court is not permitted to substitute its judgment for that of an agency. *See Dolan v. Rust,* 195 Colo. 173, 576 P.2d 560 (1978). So long as the agency decision reflects conscientious effort to reasonably apply legislative standards to particular administrative proceedings, it is neither arbitrary nor capricious. *Committee for Better Health Care v. Meyer,* 830 P.2d 884 (Colo.1992).

Here, the Commission properly held an evidentiary hearing and considered whether the applicant's prior offenses posed a threat to the control of gaming. Although he characterizes one of the thefts as an emergency and the other as "inadvertent," in both instances applicant was convicted of a crime requiring specific intent. Based on the evidence presented, the Commission could reasonably have concluded that the propensity to steal was established by applicant's several theft convictions and that he was unsuitable for licensing.

Thus, we conclude that the Commission acted within its discretion and properly determined the applicant's unsuitability based on specifically enumerated statutory criteria.

### IV.

Applicant also contends that the Commission's order does not adequately specify the statutory authority or the facts it relied upon when making its decision to deny his license. We find no merit in this argument.

Generally, an agency's findings must be adequate to apprise the parties and the reviewing court of the basis for its decision. *Burns v. Board of Assessment Appeals,* 820 P.2d 1175 (Colo.App.1991).

Contrary to applicant's assertion, the Commission's order did specifically detail both the law and the facts supporting the decision. The Commission determined that his criminal history established a pattern of disregard for lawful conduct. The Commission's order also stated that applicant had failed to meet his burden to prove he was qualified to hold a license, and it concluded that he was not a suitable person to hold a license. Sufficient evidence in the record exists to support these decisions.

Therefore, we conclude that the Commission's order does adequately specify both the statutory authority and the facts it relied upon when making its decision to deny his license.

Order affirmed.

PLANK and HUME, JJ., concur.