Thomas L. FEENEY, II,
Petitioner–Appellant,

v.

COLORADO LIMITED GAMING
CONTROL COMMISSION,
Respondent–Appellee.

No. 93CA2111.

Colorado Court of Appeals,
Div. II.

July 14, 1994.

Rehearing Denied Aug. 18, 1994.

Certiorari Denied March 13, 1995.

Cooksey & Cooksey, P.C., Michael G. Cooksey, Torres & Koktavy, P.C., Douglas D. Koktavy, Denver, for petitioner-appellant.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Susan L. Beck–Ferkiss, Asst. Atty. Gen., Denver, for respondent-appellee.

Opinion by Judge TAUBMAN.

Defendant, Thomas L. Feeney, II, appeals the order of the Colorado Limited Gaming Control Commission (Gaming Commission) revoking his limited gaming key employee license. We affirm.

Feeney originally applied for a key employee license and the Division of Gaming (Division) denied his application. Under the Limited Gaming Act of 1991, every retail gaming establishment must have a person holding such a license to be in charge of all limited gaming activities and available at all times when limited gaming is being conducted. *See* 12–47.1–501(1)(e) (1991 Repl.Vol. 5B).

Feeney appealed the Division's decision and was awarded a temporary conditional license by the Gaming Commission on June 3, 1992. This license contained conditions requiring Feeney to resolve back child sup-

port and tax issues and to provide the Division investigator with quarterly reports regarding the resolution of these issues within a year of the issuance of the license.

On application for renewal of his license, Feeney admitted that he was unable to meet the conditions imposed in the temporary license. The Gaming Commission renewed Feeney's license on July 1, 1993, and imposed new conditions proposed by Feeney. Specifically, the license conditions required him to pay $8,000 in back child support to the Denver District Court by July 5, 1993, to stay current with his monthly child support payments, and to pay an additional $8,000 in back child support by December 31, 1993.

The Division assigned an investigator to determine whether Feeney was complying with the conditions of his original license. The investigator was later assigned to investigate the renewal application and eventually to determine whether Feeney was complying with the conditions of his renewed license. Feeney and the investigator met several times regarding compliance with the child support conditions. Additionally, the investigator asked whether income tax returns for 1991 and 1992 had been filed. Feeney responded that the returns were complete and that he thought they had been filed. The investigator requested copies of these returns.

On October 14, 1993, the Gaming Commission issued an order summarily suspending Feeney's license, notifying him of charges, and ordering him to show cause why his license should not be revoked.

Both parties stipulated to the truth of charges 1 and 2, which described the conditions imposed under the temporary conditional license and the renewed conditional license. Charge 3 alleged that Feeney had failed to comply with the conditions imposed on his renewed license. Charge 4 asserted that he had failed to provide the Division assistance and information necessary to assure that he continued to be qualified to be a licensee, including failure to provide proof of filing and/or payment of state and federal taxes. Charge 5 asserted that he had deliberately and wilfully failed or refused to provide the Gaming Commission and the investigator with requested information. Additionally, charge 6 claimed that he knowingly made false statements of material fact to the investigator regarding compliance with conditions, rendering him unsuitable to hold a key employee license. Charge 7 alleged that Feeney had failed to file his 1991 and 1992 tax returns.

At the November 4, 1993, hearing, Feeney appeared without counsel, and the Division and the Gaming Commission had counsel present. The Division and Feeney presented evidence related to the charges. Based on the finding that the factual allegations contained in charges 1–6 had been proven, the Gaming Commission revoked Feeney's license and barred him from applying for a new license for one year.

On appeal, Feeney contends that the Gaming Commission acted *ultra vires* when it conditioned his license on payment of back child support and taxes. Additionally, he argues that the Gaming Commission acted arbitrarily, without due process, and revoked his license without substantial evidence.

The Gaming Commission argues that Feeney waived his right to object to its authority to impose conditions when he failed to appeal the imposition of those conditions when his license was renewed. However, we need not address this issue because we conclude that the Gaming Commission was within its statutory authority in imposing the conditions on Feeney's license.

I.

■ Feeney argues that Gaming Commission had no statutory authority to condition or revoke his license based upon his failure to pay back child support and taxes. Specifically, he contends that such conditions usurp the power of the courts, constituting extrajudicial enforcement; have no rational bearing on a licensee's suitability; and exceed the scope of the Gaming Commission's authority under the Limited Gaming Act. We disagree.

Section 12–47.1–302(1)(h), C.R.S. (1991 Repl.Vol. 5B) gives the Gaming Commission the power to issue temporary or permanent

licenses. Section 12–47.1–302(2)(*l*) C.R.S. (1991 Repl.Vol. 5B) permits the Gaming Commission to adopt regulations imposing conditions upon issuance of licenses. *See* Colorado Gaming Regulation, 1 Code Colo. Reg. 47.1–302 (August 20, 1991). Under these provisions, the Gaming Commission has broad power to condition the licenses it issues.

In order to determine the scope of such conditions, we must first look to the plain meaning of the statute. *See People v. Bergen,* 883 P.2d 532 (Colo.App.1994).

The legislative declaration, § 12–47.1–102(1)(a), C.R.S. (1991 Repl.Vol. 5B), states that: "The success of limited gaming is dependent upon public confidence and trust that licensed limited gaming is conducted honestly and competitively; *that the rights of the creditors of licensees are protected;* and that gaming is free from criminal and corruptive elements." (emphasis added) Section 12–47.1–102(2) states that: "[T]he commission should place great weight upon the policies expressed in … subsection (1) in construing the provisions of this article." This legislative directive has been echoed by two divisions of this court. *See Moya v. Colorado Limited Gaming Control Commission,* 870 P.2d 620 (Colo.App.1994) and *DeMarco v. Colorado Limited Gaming Control Commission,* 855 P.2d 23 (Colo.App.1993).

Furthermore, § 12–47.1–103(30), C.R.S. (1991 Repl.Vol. 5B) defines, for purposes of licensure, the unsuitability of persons or their activities and specifies that a person may be unsuitable for licensure because of "prior acts, associations, or *financial conditions.*" (emphasis added) Additionally, § 12–47.1–103(30) states that acts or practices of a person are unsuitable vis a vis licensure if they "violate or would violate the statutes or rules or would be contrary to the declared legislative purposes of this article."

The statute also requires licensees to be "of good moral character, honesty, and integrity …" and must be persons "whose prior activities … reputation, habits, and associations do not pose a threat to the public interests of the state…." Section 12–47.1–801(2)(a) and (b), C.R.S. (1991 Repl.Vol. 5B).

The plain meaning of the statute reveals that the General Assembly intended to give the Gaming Commission broad power to ensure public confidence in limited gaming and those who operate the games. This broad language clearly demonstrates the General Assembly's intent that the Gaming Commission consider licensees' financial backgrounds in granting and renewing licenses. Thus, under these provisions, the Gaming Commission acted within the scope of its statutory authority to determine that prompt payment of child support and taxes is in the public interest of the state.

We reject Feeney's arguments that such conditions result in extra-judicial enforcement of a child support order and are not rationally related to the suitability of the licensee or the legislative purposes of the Limited Gaming Act.

We note that the issuance and renewal of other licenses conditioned on similar financial issues have been upheld. *See Mr. Lucky's v. Dolan,* 197 Colo. 195, 591 P.2d 1021 (1979) (liquor license suspended for failure to file corporate taxes). Furthermore, such financial conditions have a direct bearing on the suitability of licensees and the legislative purposes of the Limited Gaming Act. As stated above, the statute expressly requires that licensees should be financially responsible to ensure that the public trust in limited gaming is maintained. *See Moya v. Colorado Limited Gaming Control Commission, supra* (license application properly denied to applicant that had several past criminal convictions for theft).

## II.

Feeney next contends that, even if the Gaming Commission had statutory authority to impose conditions on his license, it acted arbitrarily and without due process when it revoked his license, and its decision was not supported by substantial evidence. We disagree.

Because procedures for revocation of licenses are subject to the requirements of the Colorado Administrative Procedure Act (APA), we must employ a three-step analysis required for compliance with the APA to

determine whether the Gaming Commission acted properly when it revoked Feeney's license. *See* § 24–4–101, et seq., C.R.S. (1988 Repl.Vol. 10A). Specifically, we must determine whether the Limited Gaming Act contains sufficient standards to ensure that the Gaming Commission's revocation was not arbitrary; whether the Gaming Commission acted within its statutory authority in revoking Feeney's license; and whether the Commission's order was supported by substantial evidence. *See Moya v. Colorado Limited Gaming Control Commission, supra.*

### A. Sufficiency of Standards

██ Legislative guidelines are adequate if they ensure that administrative action will be rational and consistent and that subsequent judicial review is available and effective. *Cottrell v. City & County of Denver,* 636 P.2d 703 (Colo.1981). Because even detailed statutory standards give partial protection only, statutes should also provide for agency adoption of more specific rules and regulations to limit the exercise of broad discretionary power. *Elizondo v. State,* 194 Colo. 113, 570 P.2d 518 (1977).

██ Generally, the Limited Gaming Act provides clear standards and specific guidance to the Commission by (1) directing the agency to establish rules and regulations; (2) providing for an inquiry into the personal, financial, and criminal history of an applicant; (3) placing the burden of establishing qualification for licensing upon the applicant; and (4) providing for effective judicial review. *See Moya v. Colorado Limited Gaming Control Commission, supra.*

██ Specifically, the Limited Gaming Act provides sufficient standards to ensure rational and consistent results for both summary suspension and license revocation.

The summary suspension provision guarantees the licensee a hearing before the Gaming Commission before it takes any permanent action. Section 12–47.1–524, C.R.S. (1991 Repl.Vol. 5B).

Section 12–47.1–525, C.R.S. (1991 Repl.Vol. 5B) states generally the criteria for suspending or revoking a license. It also provides that the suspension or revocation cannot occur until the licensee is afforded notice and an opportunity for a hearing, and it further requires that charges be established by proof by a preponderance of the evidence. This section also gives the Gaming Commission the option of imposing a reprimand or monetary penalty in lieu of suspension or revocation. Further, § 12–47.1–521, C.R.S. (1991 Repl.Vol. 5B) allows aggrieved parties to appeal to this court all final Gaming Commission actions.

Finally, more specific regulations have been adopted by the Gaming Commission for disciplinary actions. *See* Colorado Gaming Regulation, 1 Code Colo.Reg. 47.1–501, et seq. (August 20, 1991). These regulations specify the grounds for disciplinary action, the procedures for initiation by the Gaming Commission or citizens, the type of notice required, the time period within which a hearing must be held, and conditions the Gaming Commission may impose on reissuance of a license.

Thus, the Limited Gaming Act not only declares the underlying policies for regulation, but also specifies criteria on which the Gaming Commission must base its decision to revoke a license. Additionally, the Act specifies a burden of proof and a right to appeal. These criteria are sufficient to allow rational, consistent, and reviewable decisions by the Gaming Commission.

### B.

██ We have concluded above that the Gaming Commission has specific statutory authority to condition licenses on failure to pay child support and taxes. Terms, conditions, or requirements limiting any license shall be valid only if reasonably necessary to effectuate the purposes, scope, or stated terms of the statute pursuant to which the license is issued. Section 24–4–104(2), C.R.S. (1988 Repl.Vol. 10A). We also conclude that the Gaming Commission has the statutory authority to revoke a license for failure to comply with conditions it mandates.

The Limited Gaming Act grants specific authority to the Gaming Commission to suspend or revoke a license for any cause which would have prevented its issuance, or for any

violation by the licensee of this article or any rules or regulations promulgated by the Gaming Commission. *See* § 12–47.1–525, C.R.S. (1991 Repl.Vol. 5B).

Under the regulations adopted by the Gaming Commission pursuant to the statute, *see* §§ 12–47.1–201, 12–47.1–203, 12–47.1–302, 12–47.1–524, 12–47.1–525, C.R.S. (1991 Repl. Vol. 5B) and § 24–4–104, C.R.S. (1988 Repl. Vol. 10A), the Gaming Commission may initiate disciplinary proceedings against a licensee if it determines that probable cause exists to believe that "violations by the licensee ... of laws other than the limited gaming laws make the licensee no longer suitable for licensing by the Commission...." Colorado Gaming Regulation, 1 Code Colo.Reg. 47.1–502(2) (August 20, 1991).

Thus, the Gaming Commission has broad statutory authority to suspend or revoke licenses.

### C.

■ Finally, we address whether the Gaming Commission acted arbitrarily and without substantial evidence to support its decision. We perceive no error.

■ To find that an agency acted arbitrarily, the reviewing court must find that no substantial evidence exists in the record to support its decision. *Moya v. Colorado Limited Gaming Control Commission, supra.*

The Gaming Commission may revoke a key employee license for any cause that would have prevented its issuance, for any violation of the Limited Gaming Act or its rules and regulations, or for the licensee's conviction of a crime involving moral turpitude or a felony. Section 12–47.1–525.

Under the APA, the Commission is required to give a conditional licensee a reasonable opportunity to comply with the conditions before it may revoke a license unless it finds that the licensee has wilfully or deliberately violated the conditions. *See* § 24–4–104(3), C.R.S. (1993 Cum.Supp.).

Here, the Gaming Commission imposed conditions on Feeney's license to ensure his suitability and financial integrity under the provisions of the Limited Gaming Act. *See*

§§ 12–47.1–302, 12–47.1–102; 12–47.1–103, 12–47.1–801. Later, the Gaming Commission found, after a hearing, that Feeney had failed to comply with the license condition to pay $8,000 in child support to the Denver District Court by July 5, 1993. Although the record demonstrates that Feeney eventually made this payment on October 22, 1993, the record also reveals that the Gaming Commission imposed this condition because Feeney had not resolved his child support problems under the temporary conditional license.

Thus, Feeney was given over a year to comply with the license conditions but did not do so until charges were filed against him. Since Feeney was given a reasonable opportunity to comply with the condition properly imposed under the Limited Gaming Act and failed to do so, the Gaming Commission did not abuse its discretion in revoking his license on this ground.

The Gaming Commission further found that Feeney failed to provide the Division of Gaming and it with information demonstrating his continuing qualifications as licensee. Specifically, the Gaming Commission found that Feeney failed to provide the Division or it with proof of filing and payment of taxes.

Section 12–47.1–504, C.R.S. (1991 Repl.Vol. 5B) imposes an affirmative duty on the part of the licensee "to provide to the regulatory, investigatory, and law enforcement authorities any assistance and information necessary to assure that the policies and requirements of this article are achieved."

The record reveals that the investigator for the Division requested income tax returns from Feeney. The record also shows that Feeney authorized the investigator to contact his tax accountant at any time and authorized the accountant to release any information required by the investigator. The investigator testified that he did not assume any duty to contact the accountant and that he made it clear that Feeney had the burden to provide information regarding his suitability.

Since the statute specifically imposes an affirmative duty on the licensee, we conclude that Feeney's authorization to the investigator and accountant was not sufficient to meet this affirmative duty. Thus, since Feeney

himself did not provide the requested information to the investigator, the record supports the Gaming Commission's factual finding that he did not provide information to assure that he was complying with the policies and requirements of the Limited Gaming Act.

The Gaming Commission further found that Feeney had wilfully and deliberately failed to provide it with information it had requested. Section 12–47.1–511(2) requires the licensee to produce information requested by the Gaming Commission. It further states that failure or refusal to provide such information may result in revocation of the licensee's license.

Here, the record reveals conflicting testimony on the Gaming Commission's request. The investigator testified that the Gaming Commission made an oral request that Feeney provide it with proof of filing and payment of taxes. Feeney testified that he was not aware of the request. The Gaming Commission minutes do not reflect such a request.

■■■■ When conflicting testimony is presented in an administrative hearing, the credibility of the witnesses and weight to be given their testimony are decisions within the province of the agency. *Mellow Yellow Taxi Co. v. Public Utilities Commission*, 644 P.2d 18 (Colo.1982). It is not the role of the reviewing court to assess credibility and weigh testimony or other evidence. *Charnes v. Lobato*, 743 P.2d 27 (Colo.1987).

Thus, we conclude that the Gaming Commission's decision with regard to this charge is supported by the record.

Finally, the Gaming Commission found that Feeney knowingly made false statements of material fact to the investigator regarding the filing of his tax returns. Section 12–47.1–801 makes it a violation of the statute knowingly to make false statements of material fact to the Gaming Commission, its counsel, or employees of the Division.

Again, the record contains conflicting testimony. The investigator testified that Feeney led him to believe that his tax returns had been filed when they, in fact, had not been filed. Feeney testified that he told the

investigator he "thought" the returns had been filed. Additional evidence reveals that the tax returns were not filed until after the charges were issued against Feeney.

Again, we must defer to the Gaming Commission's determination of the weight and credibility given to testimony. Thus, the Gaming Commission's determination with regard to this charge is supported by evidence in the record.

Accordingly, the Gaming Commission's findings of fact are amply supported by the record, and it was well within its statutory authority to revoke Feeney's license. While this result may seem harsh, the General Assembly clearly intended to give the Gaming Commission broad powers in issuing licenses to ensure that public confidence in limited gaming is maintained.

### III.

■■■■ Finally, Feeney contends that the Gaming Commission's procedures denied him due process of law. He argues that the Gaming Commission improperly limited the presentation of evidence and that, because he was not permitted to review the investigator's notes, he was denied the opportunity to present an adequate defense. He also argues that his right to due process was violated because the Division's counsel was permitted to argue that she believed he should be held strictly liable for violating the conditions of his license.

■■■■ The fundamental requisites of due process are notice and the opportunity to be heard. *Hendricks v. Industrial Claim Appeals Office*, 809 P.2d 1076 (Colo.App. 1990). If, as here, an administrative adjudication turns on questions of fact, due process requires that parties be apprised of all the evidence to be submitted and considered and that they are offered a reasonable opportunity to confront adverse witnesses and to present evidence and argument in support of their position. *Puncec v. Denver*, 28 Colo. App. 542, 475 P.2d 359 (1970). However, administrative hearings are not subject to strict compliance with the civil rules of evidence in order to promote the fact finding

process. *Fish v. Charnes,* 652 P.2d 598 (Colo.1982).

The record reveals that Feeney was given notice of the hearing. The notice document charges specific factual allegations and violations of statute. Additionally, the record further reveals that prehearing discovery was permitted.

The record demonstrates that the Gaming Commission granted the Division's motion in limine to restrict the presentation of certain evidence regarding Feeney's payment of child support. The record also demonstrates that the Gaming Commission gave Feeney substantial leeway despite the granted motion and allowed him to present evidence which otherwise could have been excluded.

With regard to the investigator's notes, the record demonstrates that Feeney did not request these notes until the morning of the hearing. The record also reflects that the investigator did not use the notes to refresh his recollection. Indeed, the investigator expressly stated that he was testifying from memory. Finally, the record reveals that Feeney had sufficient opportunity to cross-examine the investigator and to impeach his testimony despite his inability to examine the investigator's notes.

Finally, although the Division was permitted to argue a strict liability standard, the record is clear that this was argument by Division's counsel and not advice. The Gaming Commission had its own attorney present to provide it any advice it needed.

Thus, inasmuch as the Gaming Commission provided Feeney with substantial evidentiary leeway, allowed him to cross-examine and impeach the investigator, and gave him the opportunity to argue the proper standard for license revocation, we conclude there was no denial of due process in the conduct of. the hearing.

Order affirmed.

CRISWELL and MARQUEZ, JJ., concur.