In the Matter of the Application of ARISTOCRAT, INC., a Nevada corporation.

Simon Ainsworth, Intervenor–Appellant,

v.

Colorado Division of Gaming, a governmental agency; Colorado Limited Gaming Control Commission, a governmental entity; Aristocrat Leisure Limited, an Australian company; Aristocrat International PTY Limited, an Australian company; and Aristocrat, Inc., a Nevada corporation, Appellees.

No. 97CA2062.

Colorado Court of Appeals, Div. V.

Jan. 7, 1999.

Baker & Hostetler LLP, Phillip S. Lorenzo, Michael G. Martin, Rebecca C. Lovell, Denver, Colorado, for Intervenor–Appellant

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Thomas D. Fears, Assistant Attorney General, Heather Shulman, Assistant Attorney General, Denver, Colorado, for Appellees Colorado Division of Gaming and Colorado Limited Gaming Control Commission

Dill Dill Carr Stonbraker & Hutchings, P.C., H. Alan Dill, Patrick D. Tooley, Denver, Colorado; Roger M. Morris, L.L.C., Roger M. Morris, Denver, Colorado, for Appellees Aristocrat Leisure Limited, Aristocrat International PTY Limited, and Aristocrat, Inc.

Opinion by Judge BRIGGS.

Petitioner, Simon Ainsworth (Ainsworth), reached a consent order with the Colorado Limited Gaming Control Commission (Commission) concerning his involvement with Aristocrat International PTY Limited; Aristocrat, Inc., a Nevada Corporation; and their parent company, Aristocrat Leisure Limited, an Australian company (collectively Aristocrat). Ainsworth appeals a separate consent order reached between the Commission and Aristocrat in the same proceeding. We conclude that both consent orders must be vacated and the cause remanded for further proceedings.

Ainsworth is the owner and director of a trust that controls 9.1 percent of the common stock of the Aristocrat parent company, a manufacturer of slot machines. In 1994, the Commission granted Aristocrat a license to manufacture and distribute slot machines in Colorado. The license was renewed in 1995 and 1996.

In 1997, Aristocrat again applied to the Commission for renewal of its license. This time, the Commission issued a Notice of Denial. The Notice stated, among other things, that Ainsworth, his father, and two brothers were unsuitable for association with Aristocrat.

As to Ainsworth, paragraph four of the Notice of Denial stated as follows:

a. Simon Ainsworth hindered the official Turkish investigation of the low value purchase invoice investigation by directing misleading correspondence to them concerning the sales under scrutiny.

b. Simon Ainsworth openly displays a personal philosophy of lack of respect towards compliance and regulatory matters.

c. Simon Ainsworth owns and controls 9.1% of the total outstanding shares of Applicant, and acts as Director for Applicant.

Pursuant to the terms of the Notice of Denial, Aristocrat requested a hearing. Ainsworth moved to intervene and requested party status in order to contest the finding that he was unsuitable for association with Aristocrat. The Commission granted Aristocrat's motion for a hearing and, eventually, Ainsworth's motion to intervene. Those orders have not been appealed.

The Colorado Division of Gaming (Division) entered into separate settlement agreements with Ainsworth and Aristocrat. Each was subject to approval by the Commission.

The Commission approved both agreements on the same day and entered them as separate consent orders. Nothing in the record on appeal indicates that either Ainsworth or Aristocrat knew the substance of the oth-

er's agreement before the Commission approved and entered them as consent orders.

Ainsworth's consent order contains the following provisions:

a. The allegations contained in the Notice that Mr. Ainsworth is unsuitable for association with a gaming enterprise are hereby withdrawn. The Notice shall be amended to delete all of the allegations relating to Mr. Ainsworth's unsuitability, to-wit: paragraph 4, 4(a), 4(b), and 4(c), without renumbering the remaining provisions.

b. Mr. Ainsworth is suitable for association with Aristocrat, Inc. under the terms and conditions imposed pursuant to the Deed Poll dated June 5, 1997. . . . In addition, at any time, Mr. Ainsworth may petition the Commission to regain voting control of his shares of ownership of stock in any Aristocrat company, if such determination is required at that time, taking into consideration the number of shares then held by Mr. Ainsworth. Mr. Ainsworth agrees to make his petition therefore under the same conditions, terms, requirements, and obligations as are imposed upon any applicant for association with a slot machine manufacturer, distributer licensee. [sic]

The "Deed Poll" to which the agreement refers, which apparently resulted from Australian law, was executed by Ainsworth's trust. It defines Ainsworth as the "Shareholder," and states in relevant part:

The Shareholder shall not exercise any voting rights in respect of any of the Shares held by it until the expiry of five years from the date of this deed or until the Shareholder disposes of Shares so that the total number of Shares to which it is entitled comprises less than 5% of all Shares, whichever first occurs.

The Aristocrat consent order places restrictions on the Aristocrat companies in their relationships with "Named Persons." Together with his brothers, his father, and another shareholder, Ainsworth was defined by the agreement as a Named Person. The provisions pertaining to restrictions include the following:

§ 3.2 The Aristocrat Companies shall not knowingly permit any Named Person to own any stock in the Aristocrat Companies, or exercise any attendant voting rights, except as permitted by Section 3.3 of this Settlement Agreement.

§ 3.3 Notwithstanding any other provision of this Settlement Agreement, [the parent company] may permit . . . Simon [Ainsworth] . . . to retain any and all legal, beneficial, or equitable interests in [his parent company] stock holdings, consistent with the terms of the settlement agreement entered into by [Ainsworth] with the Division and approved by the Commission.

§ 3.4 The Aristocrat Companies shall not knowingly allow any Named Person to exercise influence or control, whether direct or indirect, over the operations or management of the Aristocrat Companies. The Aristocrat Companies shall not initiate any communication with a Named Person for the purpose of seeking information, advice, or direction as to any matter relating to the business of the Aristocrat Companies.

. . . .

§ 3.6 The Aristocrat Companies shall not invite or encourage the Named Person to attend business or social functions at which the Aristocrat Companies are in attendance.

§ 3.7 [The parent company] shall perform in good faith quarterly stock ownership reviews to determine if any Named Person has acquired any of [the parent company's] publicly traded stock or if any of the top one hundred (100) Shareholders (by aggregate shareholdings) in [the parent company] is a corporation, company, or entity which is operated or controlled by any Named Person. If a Named Person owns stock in [the parent company] after the date of this Settlement Agreement, other than as permitted by this Section III, or acquires stock in [the parent company], that stock ownership shall constitute a contravention of gaming laws and [the parent company] shall, consistent with Article 8 of its corporate By-laws, require

the Named Person to sell or otherwise dispose of that stock.

. . . .

§ 3.10 The Aristocrat Companies shall not knowingly enter into any business relationship with any Named Person. . . .

Ainsworth's brothers and father reached separate agreements with the Commission that were entered as consent orders. They have apparently not appealed the terms of these or any other consent orders.

Ainsworth on appeal asserts that, despite being permitted to intervene as a party and reach his own settlement agreement, he was neither informed of nor given an opportunity to be heard regarding the terms of the Aristocrat agreement affecting him. He argues that those terms amount to a de facto determination of his unsuitability, thus "negating" his own settlement agreement, and have an adverse economic impact on his profession and livelihood. Therefore, he contends the Commission abused its discretion, exceeded its authority, and denied him due process. He separately contends that collateral estoppel bars the enforcement of the Aristocrat agreement.

In response, the Commission and Aristocrat insist that the terms of the two agreements are consistent and that, because no determination on Ainsworth's suitability was made, Ainsworth's right to due process is not implicated. They also argue that collateral estoppel is inapplicable in these circumstances. Finally, they assert that, to the extent the consent orders cannot be mutually enforced, it is the Ainsworth consent order rather than the Aristocrat consent order that must be set aside.

We conclude that, because of their interrelationship, the two consent orders must be read and construed together, in essence, as one document. We further conclude that, when so construed, they contain terms not agreed to by all parties. Thus, both consent orders must be set aside. On remand, if the parties cannot reach agreement on all the terms and conditions affecting Ainsworth and Aristocrat, those matters in dispute must proceed to resolution on the merits.

## I.

Under the Colorado Limited Gaming Act (the Act), the Commission has broad discretion in regulating gaming issues. *See generally* § 12–47.1–101, et seq., C.R.S.1998; *Feeney v. Colorado Limited Gaming Control Commission*, 890 P.2d 173 (Colo.App.1994). This includes issuing licenses to slot machine manufacturers and distributors. *See* § 12–47.1–501, C.R.S.1998.

In determining whether to issue a license, the Commission must make suitability determinations for persons, acts, or practices. *See* § 12–47.1–302(2)(m), C.R.S.1998. Pursuant to § 12–47.1–103(29), C.R.S.1998, " 'Suitability' or 'suitable' means, in relation to a person, the ability to be licensed by the commission and, in relation to acts or practices, lawful acts or practices." *See also* § 12–47.1–103(3), C.R.S.1998 (defining "unsuitability" or "unsuitable").

Suitability determinations are made for, among others, key employees and holders of more than a five percent share of the beneficial interest in companies seeking licenses. Colorado Gaming Regulation Rule 4.5, 1 Code Colo. Reg. 47.1–4.509(1) and 47.1–4.510. Any person found unsuitable by the Commission may not hold directly or indirectly the beneficial ownership of any voting security of a licensee. Colorado Gaming Regulation Rule 4.5, 1 Code Colo. Reg. 47.1–4.509(6).

The Commission may impose conditions on the issuance of a license. *See* § 12–47.1–302(2)(k), C.R.S.1998. However, terms, conditions, and requirements are valid only if reasonably necessary to effectuate the purposes, scope, or terms of the Act. *See* § 24–4–104(2), C.R.S.1998; *Feeney v. Colorado Limited Gaming Control Commission, supra.*

In addition to making necessary licensing determinations, the Commission has the authority to approve settlement agreements. Approved agreements may then be entered as consent orders. *See* § 12–47.1–302, C.R.S.1998.

Consent orders entered in agency adjudications have the same legal status as

consent decrees entered by courts. 2 C. Koch, *Administrative Law & Practice* § 5.43[1] (2d ed.1997). Because they are in essence agency endorsed contracts, basic rules of contract interpretation apply. *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975).

■ In appropriate circumstances, separate agreements that pertain to the same subject matter may be read and construed together, even though they do not expressly refer to each other, and even though they are not executed by the same parties. *In re Application for Water Rights of Estes Park v. Northern Colorado Water Conservancy District,* 677 P.2d 320 (Colo.1984). This is particularly true of agreements essentially executed simultaneously. *Roemmich v. Lutheran Hospitals & Homes Society,* 934 P.2d 873 (Colo.App.1996).

■ Here, the Commission approved both settlement agreements in the same hearing, with the Ainsworth agreement approved first. The agreements themselves concern the same request for license renewal, the same Notice of Denial, and the same parties. As acknowledged by counsel at oral argument, they were entered in the same "proceeding." Indeed, it is not clear from the record why the Division did not negotiate, and the Commission approve, a single settlement agreement, resulting in entry of a single consent order.

In these circumstances, we conclude that the Ainsworth and Aristocrat consent orders must be read and construed together, in essence, as one document.

## II.

■ Consent orders, like consent decrees, are binding only on the parties who give their consent. *Equal Employment Opportunity Commission v. Pan American World Airways, Inc.,* 897 F.2d 1499 (9th Cir.1990).

■ Conversely, in order for the Commission to produce a valid consent order that determines the rights of all the parties involved in the "action," each party must agree to all the terms and conditions affecting that party's rights. *See Janus Films, Inc. v.*

*Miller,* 801 F.2d 578, 582 (2d Cir.1986)(consent judgment requires that all "relief to be provided by the judgment and all of the wording to effectuate that relief is agreed to by the parties"); *Interspace, Inc. v. Morris,* 650 F.Supp. 107, 109 (S.D.N.Y.1986)("A consent judgment is a contract to end a lawsuit in which the relief to be provided by the judgment and the wording to effectuate that relief are agreed to by the parties."); *see also Audiovisual Publishers, Inc., v. Cenco, Inc.,* 964 F.Supp. 861 (S.D.N.Y.1997).

Without such agreement, the Commission, as the licensing authority, must proceed to determine the merits of those matters in dispute concerning the application. It must then enter an order accordingly. *See Cheyenne River Sioux Tribe v. United States,* 806 F.2d 1046 (Fed.Cir.1986).

■ Here, the Ainsworth agreement specifically provided that Ainsworth was suitable for association with Aristocrat. The only condition on that finding was a restriction for five years on exercising the voting rights of stock his trust owns in the parent company.

Nevertheless, the Commission shortly thereafter approved the Aristocrat agreement. As noted, that agreement expressly prohibits the Aristocrat companies from, among other things, permitting Ainsworth to own any additional stock in the companies; permitting Ainsworth to exercise any influence or control, whether direct or indirect, over the operations or management of the companies; initiating any communication with Ainsworth for the purpose of seeking information, advice, or direction as to any matter relating to the business of the companies; inviting or encouraging Ainsworth to attend business or social functions at which the "companies" are in attendance; or entering into any business relationship with Ainsworth.

The Commission and Aristocrat do not contend that the restrictions in the Aristocrat consent order were imposed for any reason other than satisfying suitability requirements. However, those restrictions are inconsistent with the finding that Ainsworth is suitable for association with Aristocrat, sub-

ject only to the single restriction in the Deed Poll on stock voting rights.

The Commission and Aristocrat argue on appeal that the hearing officer had granted Ainsworth only "limited intervention." To the extent the argument implies that this means he had no right to contest terms of the Aristocrat consent decree affecting his rights, we disagree.

The Hearing Officer concluded that Ainsworth could be granted limited intervention pursuant to § 24-4-105(2)(c), C.R.S.1998, which states:

> A person who may be affected or aggrieved by agency action shall be admitted as a party to the proceeding upon his filing with the agency a written request therefor, setting forth a brief and plain statement of the facts which entitle him to be admitted and the matters which he claims should be decided. Nothing in this subsection (2) shall prevent an agency from admitting any person or agency as a party to any agency proceeding for limited purposes.

We agree that the statute permits a party to intervene in an agency proceeding for limited purposes. However, as we read the statute, because Ainsworth is potentially "affected or aggrieved" by certain terms in the Aristocrat consent order, the scope of his "limited intervention" must be broad enough to include the right to be informed of and object to those terms. The Commission may not then include any terms to which he so objects as part of a "consent" order with Aristocrat.

In sum, Ainsworth may be affected or aggrieved by certain terms included in the Aristocrat consent order of which he was not informed and given an opportunity to object. Because he does object, and because both consent orders must be construed together as one document, both must be set aside.

In light of this conclusion, we need not address the remaining issues Ainsworth raises on appeal.

The Ainsworth and Aristocrat consent orders are vacated, and the cause is remanded for further proceedings in accordance with this opinion.

Judge MARQUEZ and Judge TAUBMAN concur.